(Decided 28th June, 1867.)

GEORGE SMITH, Executor of JOHN HOYE and others *vs.* JEREMIAH L. TOWNSHEND and others.

*Trustees and Cestuis que trust—Purchase of Trust property by a Trustee—Election—Estoppel—Vacation of Deeds to a Trustee from his Cestuis que Trust—Jurisdiction of a Court of Equity to decree a sale of Trust property for the purpose of a Division.*

The continuance of a trust is no valid objection to a bill filed by the *cestuis que trust* to vacate deeds of the trust property, taken from them by the trustee. As soon as the trustee departed from his legal duty by taking the deeds, the equity arose and the right to apply to have them vacated.

*Cestuis que trust* have at all times the right to call a trustee into a Court of Equity for the purpose of having an account of the trust property.

Smith, Ex'r of Hoye *et al.*, *vs.* Townshend *et al.*

In order to support a purchase of the trust estate, by a trustee from the *cestui que trust*, it must appear that the trustee has thoroughly divested himself of that character in the transaction, and entered into a new and distinct contract with the *cestui que trust*, that person having the fullest information on every subject. There must be no fraud, no concealment, no advantage taken by the trustee of information acquired by him in that character.

A trustee purchased from his *cestuis que trust*, the trust property, and took conveyances for the same; afterward he died leaving a will, by which he bequeathed to the *cestuis que trust*, certain legacies. HELD:

That the legacies were not made a charge on the particular property derived under the deeds; that no case of election arose upon the will, and the *cestuis que trust* were not estopped from impeaching the deeds, by reason of having taken legacies under the will.

Where deeds to a trustee from his *cestuis que trust* of the trust property, are vacated upon their application, it is just and equitable that they should repay the purchase money with interest thereon, and the trustee be allowed such sums as may have been expended in repairs and improvements of a permanent character.

Upon competent and satisfactory proof that trust property is not susceptible of partition without loss and injury to the parties entitled thereto, and that a sale will be advantageous to them, a Court of Equity has jurisdiction and power, under the provisions of the Act of 1785, ch. 72, and its supplements, to decree a sale thereof, for the purpose of a division among the parties so entitled.

APPEAL from the Equity side of the Circuit Court for Allegany County.

Paul Hoye, of Washington county, died in 1816, leaving a will dated 9th of April, 1813, by which he devised and bequeathed to his son John Hoye, and to Leonard M. Deakins, and to the survivor of them, several tracts of land in Allegany county, together with all the stock and farming utensils on the farm whereon his son, William W. Hoye, then resided in said county, and also certain negroes, in *trust to permit and allow the children of his son William W. Hoye*, to have the use and enjoyment of the said tracts or parcels of land, together with the stock, negroes and farming utensils, and to have, receive

and enjoy the rents, issues and profits of the same jointly and for their mutual benefit and support, but no part thereof to be subject to any debts contracted by his said son William. *This trust was to continue and be in force until the death of his said son William, and until his youngest child should arrive at lawful age,* when it was his will, and direction that the aforesaid land and negroes, with their issue should be *equally divided* amongst the *children* of his said son William or *their representatives.* And further, that the said trustees should have the *legal possession, management and direction of the aforesaid land and negroes, and the increase thereof, to and for the support and benefit of the children of his said son William,* and likewise at their discretion they might allow to his said son William, any part or proportion of the said tracts of land and negroes and the increase thereof aforesaid, as from time to time they might think prudent and proper. And it was his further will and desire that should both the said trustees die before the trust thus reposed in them should be fully and entirely executed and discharged, that the Orphans' Court, for the time being, should appoint a proper person from time to time as the case might require, which said person or persons when so appointed, should have full and complete power and authority to execute and fully discharge the trusts aforesaid. He then appointed John Hoye and Leonard M. Deakins, his executors.

William W. Hoye died in 1836. He had eighteen children, and the youngest attained the age of eighteen on the 23d of July, 1852, and the age of twenty-one on the 23d of July, 1855. John Hoye proved the will of his father Paul Hoye, took out letters testamentary in the Orphans' Court of Washington County, and also entered upon the performance of the above trust on the death of his father in 1816, and continued to act as trustee in reference to the trust property, until his death in 1849,

when Edward Hoye was appointed by the Orphans' Court of Allegany County, trustee in his place. Of the children of William W. Hoye, four died under age, intestate and without issue, thus making the trust estate consist of fourteen shares. John Hoye, the trustee, during his life, and whilst in the possession and active management of the trust property, obtained from his several *cestuis que trust* conveyances of *twelve* shares of the trust property, and of the real estate of which the said William W. Hoye, died seized in his own right. The two *cestuis que trust* who did not convey, *were minors* at the date of John Hoye's death. The main object of the bill in this case was to vacate and annul *five* of these deeds, viz:

1st. A deed from Catharine Ridgely, one of the daughters of William W. Hoye, to the said John Hoye, dated December 13th, 1848, by which, for the consideration of $300, the grantor conveyed absolutely to the grantee all of her interest in the real estate of William W. Hoye, her deceased father, as also all of her interest in the trust property under the will of her grandfather.

2d. A deed from Thomas H. Armstrong and Maria Armstrong, his wife, the said Maria being also one of the daughters of the said William W. Hoye, dated August 17, 1848, by which, for the consideration of $300, all the interest of the said Maria in the real estate of her father, and all her interest in the trust property under the will of her grandfather, was conveyed to the said John Hoye absolutely.

3d. A deed dated June 3d, 1844, from Jeremiah L. Townshend and Tabitha, his wife, by which, for a like consideration of $300, all the interest of said Tabitha, another daughter, in the same property, was conveyed to the said John Hoye.

4th. A deed from Marine Drane and Mary Ann, his wife, dated February 22d, 1845, by which, for the con-

sideration of $1,400, all the interest of the said Mary Ann, another daughter, in the same property, together with certain other real and personal estate which belonged to the husband, was conveyed to the said John Hoye, absolutely.

5th. A deed dated April 25th, 1837, from George W. Drane, by which, for the consideration of $500, all the interest of Eliza, another daughter, and of Samuel Hoye, a son, (two shares,) was conveyed to the said John Hoye absolutely.

The bill in this case was filed September 14th, 1850, by the parties, grantors in the above named deeds, and the heirs and representatives of those deceased, against the widow and executor of the trustee, John Hoye, and the devisees of his real estate, and the co-devisees of the complainants, under the will of Paul Hoye. All parties in interest were made parties to the suit.

The bill alleged that these deeds were executed by the *cestuis que trust* to the trustee during the continuance of the trust; that the consideration for which they were executed was totally inadequate to the value of the interests conveyed; that at the time of their execution the grantors had no proper information as to the extent and value of the property; that from the relations of trust and confidence existing between them and the trustee, the latter had valuable information as to the nature, extent and value of the trust property, which was not in their power or possession, and he was therefore enabled to purchase the same at a price greatly less than its real value; that the trustee never gave them any information upon the subject of the said estate, but on the contrary, concealed and carefully kept from them all information as to the amount and value of the estate and the rents, issues and profits thereof. It was also charged that the trustee had received, or ought to have received, large sums of money for the rents and profits of the estate, and the hire

of the negroes ; that without authority he had sold and disposed of a large part thereof and received large sums of money therefor, which he had applied to his own private use, and had never accounted with the complainants or exhibited any account or statement of such rents, profits, hires, and proceeds of sale. The bill also charged that the said William W. Hoye died seized in his own right of a large and valuable real estate in Allegany county, which had descended to his heirs-at-law, and amongst which was a tract of land called " Western Canal Convention," containing 1,454⅜ acres, patented to the said William on the 14th of August, 1827, and several other large and valuable tracts, the names of which were unknown to the complainants, and the patents or other title papers for which, were in the possession of the executor of the said John Hoye. It further alleged that the youngest child of said William had attained the age of eighteen years, or lawful age, when, by the terms of the will, the trust property was to be divided ; that the same, as well as the real estate, of which said William died seized, was incapable of a just and equitable partition amongst those entitled thereto, and the heirs-at-law of said William, and that it would be for the interest and advantage of all parties interested to have the same sold and the proceeds distributed. The prayer of the bill was for an account of the rents, issues and profits of the trust estate, and the proceeds of such as the trustee might have sold ; for an exhibition and production of all patents or other title papers which were in the possession of John Hoye for any lands owned by William at the time of his death ; for an account from Edward Hoye, the trustee appointed in place of John Hoye, deceased, of the trust property which came to his hands, and of the rents, profits and hires thereof ; that the above mentioned deeds might be vacated, set aside and declared null and void ; that the trust property and the real estate of which the

said William died seized might be decreed to be sold for the purpose of partition and for general relief.

The answer of Smith, the executor of John Hoye, admitted the will of Paul Hoye, and that his testator took upon himself the trust; that Wm. W. Hoye died in January, 1836, leaving the children whose names and ages were stated. It then averred that the whole trust property real, consisted of a part of "The Gleanings," and "Locust Thicket," in all 4,942½ acres, and the personalty of a negro man Harry and a woman Rhoda, with her issue, and some farming utensils and stock of small value; that not more than sixty or sixty-five acres of the land were cleared and in cultivation, and in meadow, and the improvements of little or no value compared with those subsequently made by the trustee; that William was an indolent, intemperate and improvident man, and had a large family to support and no means therefor except this trust property; that he and his children lived upon, used and occupied it and enjoyed the use and profits of it up to the time of his death; that the same was totally inadequate for that purpose, and the said John Hoye was obliged to furnish large sums of money out of his own funds for the clothing, support, maintenance, board and education of the children; that he also, from time to time, advanced large sums of money to clear and enclose more land for cultivation, to make improvements on the same, and that he paid all the taxes on the trust property. The answer then set out instances of such payments and advances derived from memoranda found among the papers of John Hoye, deceased. The defendant then, from the best information he had been able to obtain, denied that the said John sold any part of the trust property. He denied all knowledge of any fraud committed by the said John Hoye in obtaining the deeds, or either of them, mentioned in the bill, and on the contrary, from the best information he had been able to obtain, he believed and insisted, that said

deeds were fairly obtained and were good and valid ; that the grantors made them with full knowledge of the situation and value of the property and rights sold and conveyed by them, and that the said John did not withhold, conceal or keep from them any information in his power, as to the amount and value of the estate, and the rents, issues and profits thereof; that the grantors, Catharine, Maria, Tabitha and Mary Ann, were born and raised on the *"Gleanings,"* and thus had personal knowledge of the property, and their husbands also lived in the county for many years before these sales, and had ample opportunities of knowing, and therefore, as he insisted, did know the value of the same, before they executed these deeds ; that the husband Armstrong lived in the neighborhood of the property and knew it, and was on terms of long and intimate acquaintance with John Hoye, and had every opportunity of knowing the full value of the interest his wife and himself were about to sell, conferred with friends about the sale, and held the subject for a long time under consideration before it was made ; that though the consideration stated in their (the Armstrong's) deed is $300, yet in fact the true consideration was a tract of land worth from $2,000 to $3,000, conveyed by the said John Hoye to trustees for the benefit of Mrs. Armstrong and her children ; he therefore insisted that these deeds were good and valid and made upon a full and fair consideration.

In regard to the real estate of William W. Hoye, and particularly the tract called "Western Canal Convention," he said it was true that the patent for it, and also for several smaller tracts were granted in the name of William, but that in equity, if not in law, the same belonged to the estate of John, he having taken up the same, surveyed them, paid the composition money, Land Office fees, and all costs and charges necessary to perfect the grants of them by the State ; that he claimed them as his own, exercised acts of ownership over them as such,

paid the taxes on them in the lifetime of William and ever since, and that William knowing he held all these lands merely in trust for his brother John, and that he was not the *bona fide* owner thereof, never claimed them as his own, or gave himself any trouble about them; that the reason why John had a number of patents for lands so taken up by him, issued in the name of William, was to facilitate his conveyance of the same, when from time to time he sold them, he, John, having frequently found difficulty in prevailing on his wife to join in the deeds to perfect the title in the purchasers; that he therefore to prevent this inconvenience and trouble, so arranged the matter with William, as to have the surveys made and the patents issued in his name, with the understanding and on the trust that he would, whenever required by John, convey them to such person as John might designate, and in no event to hold and claim them as his own, but to hold them for John and subject to his control and as his lands; that frequently when John purchased lands from other persons, he had them conveyed to William for the reason and purpose aforesaid, and when he sold them William always conveyed them as directed by John. The answer then exhibited two bonds of conveyance from William to John, dated March 24th, and Sept. 16th, 1828, by which the former agreed to convey to the latter certain tracts of land therein mentioned, including "Western Canal Convention," whenever required. The answer then stated there were other tracts, subsequently to these bonds, in the same manner taken up and patented to William, which were particularly mentioned, viz: "*Western Territory*," 239⅞ acres, "*Williamsburg*," 355 6-8 acres, "*Shepherd's Tent*," 656¾ acres, "*Underdrop*," 159 acres, and "*Civicus*," 100 acres; the patents for all which were then in defendant's possession, who found them among the title papers of John Hoye, who held them from the time they were issued to the time of his death; but the

answer insisted that these lands were also the *bona fide* property of John, and were held by William subject to the same trust and confidence on the part of William as those previously mentioned, and that respondent believed William would have conveyed the same to John had he lived a day longer, he having declared on his death-bed his anxiety to make a will directing their conveyance to John as the rightful owner of them; the defendant therefore insisted, that both in law and in equity, these lands formed no part of the real estate of William, and ought not to be divided among his heirs or sold for their benefit, but that they formed part of the real estate of John, and passed under his will to his devisees.

John Hoye and Edward Hoye, two of the sons of William, and *cestuis que trust*, but also two of the four *principal devisees* of all the real and personal estate of John Hoye, under his will, filed answers, in which they resisted the bill and insisted that the deeds assailed thereby were valid. The defendant John admitted he executed a deed to his uncle John Hoye, deceased, as stated in the bill, and he averred he did the same with full knowledge of the extent and nature of his rights, and of the estate conveyed, and that his uncle never concealed or attempted to conceal from him any knowledge he had of the same. He further stated that so far from his uncle having concealed from him or his brothers and sisters any knowledge he might have of the value of the rents and profits of the trust estate, he always spoke very freely, fully, and as he believed frankly, upon the subject; that such was the nature and extent of the estate and the profits of the same, that it was known to all or nearly all of the parties entitled thereto, they being all born and raised on the real estate, and many of them afterwards living in the neighborhood, and able at any and all times they might desire it fully to inform themselves in relation thereto, he therefore, so

far as he had any knowledge of the course and manner of dealing by his uncle with the trust estate and the *cestuis que trust*, and he was a close and interested observer of the same for many years, denied all concealment of information as alleged, and insisted that the deeds were valid and were made by the grantors respectively, with a full knowledge of their rights and the value of these rights, it being in the power of each and all of them to inform themselves fully as to the nature, extent and value of the property so conveyed by them. The defendant Edward, adopted the answer of Smith, the executor, and made substantially the same allegations as to the deeds, as were contained in that of his brother John. Elizabeth Hoye, the widow of David Hoye, a deceased son of William, also filed her answer, which was not of importance.

Elizabeth Hoye, Elijah Bishop, and Ann his wife, and George Pearson, and Eleanor S. his wife, (being three of the *cestuis que trust*) answered, admitting the facts charged in the bill, and submitted to a decree. Hanson Jordan, and Marian D. his wife, (another *cestui que trust*,) answered, and admitted the main allegations of the bill, and insisted that they were deeply interested in the property, and were desirous of having the same sold, and submitted to a decree for that purpose. Two of the defendants, Elizabeth and Marian, never conveyed their interests to the trustee. All the infant defendants answered by guardian. An interlocutory decree was passed against Mary Hoye, the widow of the deceased trustee, John Hoye, and against Daniel J. Hoye, another of the *cestuis que trust*. Mr. Gordon was then appointed special judge in the case, and a commission issued and testimony taken which was directed to several points. In regard to the value of the trust property, the only point in the testimony to which particular reference need be had: according to the witnesses

for the appellees (complainants below,) the share of the land owned by each *cestui que trust*, and conveyed by the deeds assailed, was worth at the lowest valuation $1,058.57, and at the highest valuation $1,765. According to the highest estimate made by the witnesses for the appellants, a child's share in these lands was worth at the time the deeds in controversy were executed, $530, and at the lowest estimate $353.

An opinion was delivered in the case by Mr. Gordon, but before decree passed he resigned his position as special judge, and Mr. Walsh was appointed in his place, who delivered an opinion, and on the 21st of September, 1859, passed a decree vacating all the deeds assailed by the bill, requiring an account from the executor of the deceased trustee, and decreeing a sale of all the real and personal estate mentioned in the proceedings, and appointing a trustee to make the sale, for the purpose of partition.

On the 23d of November, 1859, after the passage of the decree, Daniel J. Hoye, one of the defendants against whom an interlocutory decree was passed May 13th, 1854, for failure to appear and answer, came in and without leave filed his answer, in which was set up the additional defence, that all the complainants had received pecuniary legacies bequeathed them by the will of John Hoye, and were therefore estopped from disputing the title of John Hoye to these lands, which he had devised for the purpose of raising the money to pay these legacies, &c. By the exhibits accompanying this answer it appeared these legacies were all, save one, paid by Smith, the executor of John Hoye, after the bill in this case had been filed. The defendants on the 22d of May, 1860, appealed from the decree, but the record does not appear to have been made out until the 12th of January, 1864, and was not transmitted to and filed in this Court until the 3d of February, 1865.

The cause was argued before Bowie, C. J., Bartol and Weisel, J.

*J. H. Gordon* and *Thomas J. McKaig,* for the appellants, contended:

That the deeds from the children of William W. Hoye to John Hoye, were good, notwithstanding the trust was technically continuing.

First. Because the rule of law is not that the trustee cannot buy from the *cestui que trust,* but only that the Court will scrutinize such sales closely.

Secondly. Because the grantors in those deeds were all of full age, and the daughters were joined by their husbands in the deed. It is not like the case of an infant whose lands have been sold by a trustee and purchased for him.

Thirdly. Because the grantors had lived all their lives upon the land; had been brought up by their father upon those lands. He was a land surveyor in that part of the county, and therefore knew the number of acres in every tract in that part of the county. John Hoye lived in Cumberland, sixty miles distant, and John Armstrong, a witness, says that John Hoye himself did not know the lines of the tract, but he cannot fix the time, but it must have been after the deeds were executed, for he says the patent issued since Hoye's death.

Fourthly. Because there could have been no concealment in relation to this land, as the grantors knew all about them.

Fifthly. Because these complainants knew that their uncle had spent more in feeding, clothing and schooling them than the whole property was worth twice told, therefore there was nothing to sell but the land, and they knew its value. The boys were advanced in years, and the girls had their husbands and brothers to advise them.

Sixthly. Because John Hoye had no motive in cheating these grantors ; they were his heirs-at-law ; were brought up and educated by him, and not only got all this property, but all John Hoye's estate, and this is only a quarrel between the brothers and sisters as to its division.

Eighthly. Because independent of everything else he paid them a fair price, and as much as they could have sold it for.

Ninthly. Because they took their legacies under Hoye's will, and they cannot now be permitted to come in and claim the land which was expressly devised to pay these legacies. *McElfresh, Adm'r, vs. Schley & Barr,* 2 *Gill,* 181.

The appellants further insist that the decree for the sale obtained on the testimony of Thomas Devecmon, without notice, should alone be sufficient to set aside the decree. It was an important question whether the lands were capable of division, and the defendants had a right to notice and an opportunity to produce their proof.

That the decree must be reversed as erroneous, because the Court did not pursue the mode prescribed by the Act of 1820, chapter 191. *Stallings et al. vs. Stallings,* 22 *Md. Rep.,* 41, lately decided on appeal from Allegany county ; *Tomlinson et al. vs. McKaig et al,* 5 *Gill,* 256 ; *Chaney and Wife vs. Tipton et al.,* 11 *Gill & John.,* 253 ; *Wilhelm vs. Wilhelm,* 4 *Md. Ch. Dec.,* 330 ; *Hughes' Case,* 1 *Bland,* 46.

The will of Paul Hoye devises his estate to be held by the trustees for the benefit of the children of William W. Hoye, until their father's death, and until the youngest child should arrive at lawful age, and the bill was filed before the youngest child was eighteen years old, which could not be done.

If the Court should not reverse the decree, it ought to be sent back without affirmance, under the Act of 1832, chapter 302, section 6, for an amendment of the answers, and for additional evidence. *Williams vs. The Savage*

Smith, Ex'r of Hoye *et al.*, *vs.* Townshend *et al.*

*Manufacturing Co.*, 3 *Md. Ch. Dec.*, 420; *White vs. The Okisko Co.*, 3 *Md. Ch. Dec.*, 214; *Buchanan et al. vs. Lorman et al.*, 3 *Gill*, 51; *Young vs. Frost et al.*, 1 *Md. Rep.*, 395; *Stump et al. vs. Henry et al.*, 6 *Md. Rep.*, 201; *Watson vs. Bane et al.*, 7 *Md. Rep.*, 129, 130; *Berry vs. The Convention of the Episcopal Church*, 7 *Md. Rep.*, 581.

*Oliver Miller*, for the appellees.

As to that portion of the decree which vacates the deeds. It is clearly settled that a trustee cannot purchase the trust property from himself or his co-trustee, either at public or private sale, and every such contract is voidable *absolutely*, at the instance of the *cestui que trust*, without regard to its fairness or any other consideration whatever. The relationship of the parties absolutely forbids the making of any such contracts; they are always set aside upon the proper and reasonable application of the parties interested. *Richardson vs. Jones*, 3 *G. & J.*, 184; *Mason vs. Martin & Kemp et al.*, 4 *Md. Rep.*, 124.

It has been decided, however, in some cases that the same stringent rule does not apply to the case of a purchase effected by contract or agreement between the trustee and his *cestui que trust*, who is *sui juris*, and competent to deal independently of the trustee in respect to the trust estate. In other cases it has been argued with great earnestness and force, and decided, that the governing principle ought to be and is the same in both cases. Between these two classes of cases this Court, in *Hoffman Steam Coal Co. vs. Cumberland Coal and Iron Co.*, 16 *Md. Rep.*, 506, declined to decide. They say, however, that the decisions which allow in any case of a purchase by a trustee from his *cestui que trust*, who is *sui juris*, hold and decide that the *presumption* of the *law* is always against the transaction; that the *onus* is always on him, to show the perfect *bona fides* of the transaction and circumstances

which *relieve* it from the censure of the law. There must be the most perfect *good faith*, and the Courts will scrutinize and watch the transaction with the utmost diligence and vigilance ; there must be no unfair advantage taken ; no withholding or concealment of information ; the dealing must be on equal terms, and at *arms length;* there must be no advantage taken by the trustee of information acquired by him in the character of trustee ; the *cestui que trust* must be made aware he is dealing with his trustee, and all information possessed by the latter in regard to the extent and value of the trust property, the subject of the sale, must be imparted to the vendee. " It is a difficult case to make out," (says LORD ELDON,) " whenever it is contended that the exception prevails,"' and but one or two cases, it is believed, can be found in all the books where, in the absence of *laches,* acquiescence or confirmation such a contract has been sustained. The authorities are numerous, and uniformly condemnatory of such transactions. Some of them, in addition to these already cited, are : *Hill on Trustees,* 785, 786 ; *Story's Eq.,* secs. 321, 322, &c. ; *Fox vs. Mackreth,* 2 *Bro. Ch. Cases,* 400 ; *Campbell vs. Walker,* 5 *Ves.,* 678 ; *Gibson vs. Jeyes,* 6 *Ves.,* 266 ; *Ex parte Lacey,* 7 *Ves.,* 625 ; *Ex parte James,* 8 *Ves.,* 348 ; *Coles vs. Trecothick,* 9 *Ves.,* 234 ; *Ex parte Bennett,* 10 *Ves.,* 385 ; *Morse vs. Royal,* 12 *Ves.,* 373 ; *Lowther vs. Lowther,* 13 *Ves.,* 102 ; *Huguenin vs. Baseley,* 14 *Ves.,* 299 ; *Lady Ormond vs. Hutchinson,* 16 *Ves.,* 106 ; *Farnam vs. Brooks,* 9 *Pick.,* 224 ; *Davoue vs. Fanning,* 2 *Johns. Ch. Rep.,* 252 ; 1 *Lead. Cases in Eq., (White & Tudor,)* 126, *et seq.*

Testing these deeds by the principles thus fully established, it is respectfully submitted that it is impossible to sustain them ; for it is clearly enough proved that the price paid was utterly inadequate to the value of even the trust real estate conveyed by them, and " mere inadequacy of price will go a *vast way* in the mind of the

Court towards setting them aside.  *Morse vs. Royal*, 12 *Ves.*, 373 ; *Pugh vs. Bell*, 1 *J. J. Marshall*, 406 ; *Hill on Trustees*, 786.

It is also clearly proved that the trustee had information in regard to the extent and value of the trust property, which his *cestuis que trust* had not, and which he concealed from, or did not impart to them at the time he obtained these deeds.   By the terms of the trust, he was to have the possession, direction and management of the trust property, and this alone raises the presumption of superior knowledge on his part.   Again, he in fact had possession of all the patents, title papers, &c., showing the outlines and quantity of the land, and actually had it surveyed and laid out, and yet he fails to show that he ever exhibited these title papers, or gave to his *cestuis que trust* any information they might contain, or that he had gained by the survey as to the location and quantity of the land.   The mode and manner of obtaining the deeds, his evidently eager desire to purchase out the interest of all the *cestuis que trust*, and to get the title to all the land in himself, the absolute and entire confidence they reposed in him, and their depending upon him, the advice given them by Devecmon when the deeds were executed, all show that this transaction was not such a dealing between parties on an equal footing, and at arms length, as a Court of Equity in all such cases requires, and imperatively demand that these deeds should be set aside.

Most of these *cestuis que trust* were at the time of the execution of the deeds assailed, married women, under the disability of coverture, and therefore, not *sui juris*, within the meaning of that term, in the cases referred to. And in such a case, a trustee can never purchase, except by the authority of a Court of Equity first had, upon a bill filed by him for that purpose.   1 *Lead. Cases in Equity*, 129; *Compbell vs. Walker*, 5 *Ves.*, 682 ; *Mulvany vs. Dillon*, 1 *Ball & Beatty*, 418.

The point raised in the answer of Daniel J. Hoye, that the complainants are estopped from claiming these lands, because they have received legacies under the will of John Hoye, even if it can be raised at this stage of the case, is not tenable. The will of John Hoye does not raise an election. It does not attempt or profess to dispose of any property, which these complainants claim in this case. If the "Gleanings," or any other particular piece of property claimed by these complainants, had been disposed of by name, then there might be an inconsistency between the taking of the legacies under the will, and the claiming such property by title paramount to the will. The intention to raise an election, must be clear and manifest from the will itself,—it cannot be proved by evidence *dehors* the will. And there must appear in the will or instrument itself, a clear intention on the part of the author of it to *dispose of that which is not his own.* By this will John Hoye does not profess to dispose of any property which is not absolutely his own. 1 *White & Tudor's Lead. Cases,* 259, 260, 273, 274, 275 and cases there cited; *Hall vs. Hall,* 1 *Bland,* 130, 135 ; *Jones vs. Jones,* 8 *Gill,* 203.

The attempt to set up title in John Hoye in the lands, of which William W. Hoye died seized in his own right, cannot be sustained. The legal title to these lands was in William, and there is no case made out to authorize a Court of Equity to interfere with that title. A resulting trust cannot be sustained, nor can it be insisted, that a Court of Equity should interfere upon any of the grounds stated in the answers, or proved by the defendant's own witnesses. For if John Hoye had the legal title to these lands placed in William, in order to deprive his wife of her dower interest, in case she should refuse to unite in a conveyance of them, as stated in the answer, or for the purpose of preventing his creditors from reaching them, as proved by the defendant's witnesses; a Court of Equity

will not in either case interfere, to aid such a transaction. *Parker vs. Sedwick*, 4 *Gill*, 318.

The other matters embraced in the decree, such as directing an account, &c., are all proper, because a *cestui que trust* has at all times, and as a matter of course, the right to call the trustee into equity, for the purpose of having an account of the trust property. The mode of stating the account, and what allowances are to be made, are all matters to be litigated after the decree passes. The decree for an account is a matter of right, where the relationship of trustee and *cestui que trust* is once proven to exist.

In support of the motion to dismiss the appeal, it is insisted that the same should be dismissed, because the record was not transmitted to this Court within the time required by law, and it is shown that this delay was not occasioned by the omission, neglect or default, of the clerk. *Code, Art.* 5, *secs.* 8, 29, 30 ; *Act of* 1864, *ch.* 323 ; *Act of* 1842, *ch.* 288 ; *Hannon's Excr's vs. The State, use of Robey and Wife*, 9 *Gill*, 440 ; *State, use of Farmers' Bank of Maryland, vs. Mackall*, 11 *G. & J.*, 456 ; *Glenn vs. Chesapeake Bank, Alexander et al.*, 3 *Md. Rep.*, 475 ; *Dugan vs. Hollins et al.*, 11 *Md. Rep.*, 41 ; *Mayor, &c., of Baltimore vs. Reynolds*, 18 *Md. Rep.*, 270.

But no appeal lies from so much of the decree, as vacates the deeds, because, in the agreed statement of facts, it was agreed, that in the event that the Court should consider and decree, that any one of these deeds should be set aside, *then the same shall be set aside*, though the whole of them may not be decreed to be vacated, and there is no reservation of the right to appeal.

BARTOL, J., delivered the opinion of this Court.

The relief prayed by the bill in this case is, that certain deeds therein mentioned, made to John Hoye in his

lifetime, shall be vacated and set aside; that George Smith, executor of John Hoye, deceased, shall be required to render an account of the trust, which was vested in his testator by the will of Paul Hoye, deceased; and that Edward Hoye, the new trustee, may render an account of his trust, and that the real and personal estate so devised in trust by Paul Hoye, and the real estate of which William W. Hoye died seized, be decreed to be sold, and the proceeds thereof be divided among the complainants and other parties interested; it being alleged in the bill that the same is incapable of a just and equal partition among the parties entitled, and that it will be for their interest and advantage that the same be sold for the purpose of division.

The provisions in the will of Paul Hoye, creating the trust, directed that the trust should continue till the youngest child of William W. Hoye should arrive at lawful age. At the time the bill was filed, Maria D. Hoye, the youngest child, was a minor; and for that reason, the appellants have argued that the bill was prematurely filed, and that to grant the relief prayed would break up and destroy the trust. But the bill charges that John Hoye, the trustee, violated his duty in purchasing the trust estate, and taking the deeds from the *cestuis que trust;* and so far as relief is asked in respect to the deeds, it is no valid objection to the bill that the trust was continuing. So soon as the trustee departed from his legal duty, in taking the deeds, the equity arose, and the right to apply to have them vacated. The bill also prays an account; and *cestuis que trust* have at all times the right to call a trustee into equity for the purpose of having an account of the trust property.

We concur in the conclusions expressed in the opinions of the special judges, Mr. Gordon and Mr. Walsh, that the deeds to John Hoye mentioned in the bill of complaint, ought to be vacated and set aside, so far as they

purport to convey to him the interest and estate of the grantors in the lands devised in trust by the will of Paul Hoye.

The principles which govern Courts of Equity in dealing with transactions of this kind are fully stated in *Hill on Trustees,* 785, 785; 1 *Story's Eq. J.,* secs. 321, 322, &c.; *in Fox vs. Mackreth,* 2 *Bro. Ch. Cases,* 400; *Ex-parte Lacey,* 6 *Ves.,* 626; *Coles vs. Trecotheck,* 9 *Ves.,* 234, and *Morse vs. Royal,* 12 *Ves.,* 373, and by Chancellor Kent in *Davoue vs. Fanning,* 2 *Johns. Ch. R.,* 252; and have been repeatedly recognized by this Court.

In order to support a purchase of the trust estate by a trustee from the *cestui que trust,* it must appear that "the trustee has thoroughly divested himself of that character in the transaction, and entered into a new and distinct contract with the *cestui que trust,* that person having the fullest information on every subject." "There must be no fraud, no concealment, no advantage taken by the trustee of information acquired by him in that character."

Without recapitulating the facts and circumstances of this case as disclosed by the proof, it is very evident that the grantors were ignorant of the quantity and value of the estate they were selling, no information on this subject appears to have been communicated to them by the trustee, who had possession of the title papers, and must be presumed to·have known the extent and value of the property.

They looked upon· him as their benefactor, and dealt with him under the influence of the most implicit confidence in his benevolent intentions towards them.

According to the evidence the price paid was greatly inadequate to the value of the property conveyed by the deeds; and this is confirmed by the fact that the grantee promised to make other arrangements in satisfaction. Under such circumstances the conveyances to the trustee of the trust property cannot be sustained.

In the opinion of this Court, the complainants are not estopped from impeaching these deeds, by reason of their having taken legacies under the will of John Hoye. This question is not properly presented by the record, being raised by the answer of Daniel J. Hoye, filed irregularly after the passage of the decree, and without leave of the Court. But inasmuch as the case will be remanded for further proceedings, it is proper to express our opinion on this point.

The question of election does not arise upon the will of John Hoye. "The intention to raise an election must be clear and manifest from the will itself." *Jones vs. Jones*, 8 *Gill*, 197; *White & Tudor's L. Cases in Equity*, 259, *et seq.* The legacies are not made a charge on the particular property derived by John Hoye under the deeds.

He devises only the property that belonged to himself, and does not profess to devise by name or designation the trust property claimed by the complainants; there is, therefore, no inconsistency in their taking the legacies under the will, and claiming the trust estate conveyed by the deeds.

The deeds in question convey also the interest and estate of the grantors in the lands derived from William W. Hoye, and the decree passed by the Court below declared them to be invalid in that respect also, and set them aside *in toto*. This, we think, was error.

We agree with the opinion expressed by the Judge below, that there is no sufficient evidence of a resulting trust in John Hoye in these lands, and the appellants have failed to establish his title thereto as against William W. Hoye. But there is no reason why the deeds are not valid and effectual to convey to John Hoye all the estate held by the grantors therein. The deeds are not assailed as fraudulent in fact; there is no charge in the bill which affects their validity, except in so far as they purport to convey the property held in trust.

As to the rest, there was no disability in John Hoye to purchase; as to that property he was a stranger to the title, not a trustee; the grantors were *sui juris*, and capable of executing a valid deed, and in the absence of the allegation and proof of fraud or *mala fides* in the transaction, the deeds, so far as they purport to convey the property derived from William W. Hoye have not been successfully impeached, and must be declared valid. In respect to that property, therefore, the complainants having no title or interest, have no equity to maintain this bill for the purpose of having a partition or a sale thereof.

We have said that the complainants are entitled to have the deeds cancelled so far as they purport to convey the trust property. In granting this relief, it is equitable that the complainants be required to repay the purchase money with interest thereon, and that the trustee should be allowed such sums as may have been expended in repairs and improvements of a permanent character; and these items, if such be proved, must enter into the account to be taken by the auditor. 1 *Wh. & Tudor's L. Cases in Eq.*, 116, *m.*

In estimating the amount of purchase money actually paid for the trust property, it will be necessary to take proof of the value of the other property conveyed by the deeds, and in respect to which they are valid, and the purchase money to be refunded, will be only the excess, if any, of the price paid beyond the value of the other property which passed by the deeds.

In our opinion the Court of Chancery has jurisdiction and power, under the averments in this bill, to decree a sale of the trust property for the purpose of a division among the parties entitled, upon competent and satisfactory proof that the same is not susceptible of partition without loss and injury to them, and that a sale will be advantageous to them. This question was decided in

*Billingslea vs. Baldwin and Wife et al.,* 23 *Md. Rep.,* 85, and rests upon the construction of the Act of 1785, chapter 72, and its supplement. See also *Earle vs. Turton, October Term,* 1866.

In the record before us there is no competent and sufficient proof to authorize a decree to sell, the only evidence being that of Mr. Thomas Devecmon, which was taken irregularly under a commission executed without notice. To support the allegations of the bill in this behalf further proof is necessary.

Without affirming or reversing the decree of the Circuit Court, this cause will be remanded under the Act of 1832, chapter 302 (Code, Art. 5, sec. 28), for further proceedings, that further proof may be taken, accounts stated and a decree passed in conformity with the opinion of this Court.

*Cause remanded.*

