PETER EICHELBERGER, Executor of DANIEL
DOMER *vs.* WILLIAM HAWTHORNE.

*Rights of a Purchaser of Real Estate under an
Order of the Orphans' Court, when the sale is
·vacated. Jurisdiction of the Orphans' Court —
Equity Jurisdiction.*

Certain real estate was sold by executors, and the sale was reported by
them to the Orphans' Court, who passed the usual order of ratification
*nisi*, but never passed the order of final ratification. A deed was exe-
cuted by the executors to the purchaser, and they subsequently passed a
final account in the Orphans' Court in which they charged themselves
with the purchase money, and the same, with other funds in their hands,
was, by that account, after payment of debts, distributed to the parties
entitled. Some years afterward, one of the distributees, by next friend,
filed a petition in the Orphans' Court alleging that the sale was not fair
and *bona fide*, but was made by collusion between the purchaser and the
executors, with the understanding that the latter should participate in
the purchase and share the benefit thereof—that the land did not sell for
its real value, and the sale had never been finally ratified—and that he
had never received his distributive share of the estate; for these reasons
he objected to the ratification of the sale, and prayed that it might be
disaffirmed and rejected. The purchaser answered the petition insisting
upon the fairness and *bona fides* of the sale, and upon its ratification.
The executors also answered and admitted most of the allegations of the
petition, but stated that they were not aware at the time that they were
violating the law or their duty as executors in becoming interested in
the purchase. The Orphans' Court, after hearing, passed an order reject-
ing and setting aside the sale. One of the executors thereupon declined
to act further as such, and the other gave a new bond and became sole
executor, and under an order of the Orphans' Court re-sold the property.
Thereupon the original purchaser filed a bill in equity (to which all the
distributees and the second purchaser were made parties,) asking that
the original sale to him might be confirmed, and his title to the land
secured, but if that could not be done, then that he might be re-im-
bursed out of the purchase money arising from the second sale, the full
amount he had paid the executors on the original purchase. The Cir-
cuit Court passed a decree allowing the complainant the whole amount
of the purchase money for which the land was sold to him by the execu-
tors, with interest thereon from the time of payment, also the cost of all

permanent improvements made on the premises during the time he had possession thereof, and charging him with the rents, issues and profits of the land during the same period. On appeal by the executor, this decree was affirmed.

The Orphans' Court upon vacating a sale made by an executor under its order, has no power to pass upon and adjust the rights and equities of the purchaser, growing out of the order of vacation; such jurisdiction belongs exclusively to a Court of Equity.

APPEAL from the Circuit Court for Washington County, in Equity.

The cause was argued before BARTOL, C. J., STEWART, MILLER and ROBINSON, J.

*Z. S. Claggett,* for the appellant.

The sale to Hawthorne was not ratified, and was fraudulently and illegally made, and the order of the Orphans' Court vacating and setting aside the same is conclusive upon the complainant, and this Court has no jurisdiction to take cognizance of it, *or any pretended rights created thereby,* or in any manner to relieve the complainant from the consequences of his conduct in reference to the sale.

The executors were purchasers at their own sale, and this the policy of the law forbids. The complainant was a party to the fraudulent transaction, and was equally guilty of the fraud, and is to be deemed *particeps criminis,* and has no right to relief in this Court. Where parties are concerned in illegal transactions, whether they are *mala prohibita* or *mala in se,* Courts of Equity will not grant relief, acting upon the known maxim: "*In pari delicto potior est conditio defendentis, et possidentis.*"

"Whoever is a party to an unlawful contract, if he has once paid the money stipulated to be paid in pursuance thereof, he shall not have the help of a Court of Equity to fetch it back again." *Smith's Lead. Cases,* 497; *Shoemaker*

*vs. National Mechanics' Bank,* 31 *Md.,* 396, 402; *Albert and Wife vs. Savings Bank,* 2 *Md.,* 160, 171 *and* 172; *Merrick vs. The Trustees of the Bank of the Metropolis,* 8 *Gill,* 72; *Bayne vs. Suit,* 1 *Md.,* 80, 86; *Sedgwick vs. Sedgwick,* 6 *Gill,* 39; 1 *Story's Equity,* sec. 298 *and* 299; *Peacock vs. Terry,* 9 *Georgia,* 147; *Smith & Merritt vs. Dickson & Harris,* 9 *Georgia,* 404; *Adams vs. Barrett,* 5 *Georgia,* 415, 416; *Howell, Adm'r, vs. Fountain, et al.,* 3 *Kelly,* 176.

If the contract is illegal and fraudulent, no action will lie in disaffirmance of it. *Stewart vs. Iglehart,* 7 *G. & J.,* 132, 136.

*William T. Hamilton,* for the appellee.

If the executors, or one of them, had an interest in the sale, it was not therefore necessarily void — it was only voidable.

Such a sale can be affirmed by the *cestuis que trust,* upon full information of all the facts, as it was in this case by a majority of them—acquiescence for a long time, with knowledge, will affirm it. But such sale will be set aside as a matter of course, if required by the *cestuis que trust,* or any one of them, not upon the ground that it is necessarily fraudulent, but for the reason that it is against the policy of the law, that persons holding the relation of trustees should deal with the estate or interest of their *cestuis que trust. Ex parte James,* 8 *Vesey,* 345; *Campbell vs. Walker,* 5 *Vesey,* 678, *Cumberland Coal & Iron Co. vs. Sherman, et al.,* 20 *Md.,* 117; *Hoffman Steam C. Co. vs. C. Coal & Iron Co.,* 16 *Md.,* 457; *Williams' Ex'rs. vs. Marshall,* 4 *G. & J.,* 376; *Ex parte Bennett,* 10 *Vesey,* 380, 400; *Hawley vs. Cramer,* 4 *Cowen,* 744.

But there is another principle equally well settled, and that is, that the purchaser will be entitled to terms, and justice will be rendered him in setting aside such sale. He will be entitled to a return of the money paid by him, with interest, and for permanent improvements, and charged with rents. The *cestuis que trust* will not be entitled to have again the

lands, and also the money already paid. *Bell vs. Webb & Mong*, 2 *Gill*, 165; *Mason vs. Martin & Kemp*, 4 *Md.*, 124; *Leading Cases in Equity*, 158, (*top*.)

MILLER, J., delivered the opinion of the Court.

A statement of some of the material facts disclosed by the record is important to a proper understanding of the questions presented by this appeal.

Daniel Domer died in 1846, leaving a will by which he devised all his real estate to his wife for life, and on her death he directed and empowered his executors to sell the same, and execute deeds therefor to the purchasers as soon as the purchase money was paid, or secured to be paid, and to distribute the proceeds equally to his three children, the issue of any child dying before distribution to have the portion their father or mother would have been entitled to if living. He appointed David Domer, one of his sons, and the appellant, Peter Eichelberger, his executors. The widow died in 1851, and the executors, in execution of their trust, obtained, in February, 1852, an order from the Orphans' Court directing them to sell the real estate, in pursuance of which they sold, on the 4th of August, 1852, one hundred and thirty-nine acres of land to the appellee, William Hawthorne, at $12 per acre. This sale was duly reported to the Orphans' Court by the executors, and the Court, on the 7th of September, 1852, passed thereon the usual order of ratification *nisi*, but never passed any order finally ratifying the sale. The executors then passed a final account in the Orphans' Court, on the 25th of April, 1853, in which they charged themselves with the purchase money for this land, and the same with other funds in their hands is by that account, after payment of debts, distributed to the parties entitled. It also sufficiently appears from the record that all the distributees have received their respective shares of this distribution, except George H. Domer, a grandson, who was then under age, and whose share amounting to $130\frac{55}{100}$ still remains in the

hands of the appellant as executor. On the 31st of October, 1853, the executors executed a deed for the land to Hawthorne, the purchaser, by which they acknowledge receipt of the consideration of $1,668.

In this condition as to title the land remained until the 17th of August, 1860, when Geo. H. Domer, by next friend, filed a petition in the Orphans' Court alleging the sale was not fair and *bona fide*, but was made by collusion and according to previous concert and agreement since carried out between the purchaser and the executors, that the latter should become participants and partners in the purchase and share the benefit thereof; that the land did not sell for its real value, and the sale has never been finally ratified; that he has never received any distribution from the estate of his grandfather, and for these reasons he objects to the ratification of the sale and prays that it may be disaffirmed and rejected. Hawthorne answered this petition insisting upon the fairness and *bona fides* of the sale and upon its ratification. The executors also answered, but admitted most of the allegations of the petition, stating, however, they were not aware at the time that they were violating the law or their duty as executors in becoming interested in the purchase; they also charge in their answer that Hawthorne never paid them but the sum of $800 on the purchase. Testimony in reference to the subject of this petition was then taken, and the Orphans' Court upon hearing and argument of the case passed an order dated the 3d of November, 1860, rejecting and setting aside the sale, but the order on its face assigns no reasons for its passage. David Domer, one of the executors, then declined to act further as such, and the appellant thereupon gave a new bond, became sole executor, and then proceeded under the order of the Orphans' Court to re-sell the property. After sales to several purchasers who refused to comply, he effected a sale about the 10th of December, 1863, to James Null for $1,750, in whose hands the purchase money remains, but he is willing to pay the same into Court

under the present proceedings in equity provided he can obtain a good title to the land.

The prayer of the present bill in equity filed by the appellee originally against the executors and George H. Domer, but to which by various amendments all the distributees and the second purchaser Null are made parties, is that the original sale to the complainant be confirmed and his title to the land secured, but if this cannot be done then that he be reimbursed out of the purchase money due by Null the full amount he paid to the executors on the original purchase and for general relief.

One of the disputed questions of fact in the case is, did the complainant pay to the executors the full amount of the purchase money he contracted to pay them for the land? Upon all the proof in the record, which we have examined with much care, we decide this question in the affirmative. We are also of opinion the land sold for its then fair value; there is certainly no such inadequacy of price shown as would justify a Court of Equity in setting the sale aside on that ground if it had been made under its decree.

The complainant has acquiesced in the refusal of the Court below to interfere with the order of the Orphans' Court vacating the sale, and that question is not now before us. The chief ground on which the appellant's counsel resists the relief to the extent of reimbursing the complainant his purchase money and for permanent improvements made on the land, is that the original contract of sale to him was illegal and fraudulent, and was so decided to be by the Orphans' Court, and, therefore, he is not entitled to the aid of a Court of Equity in respect to any money he has paid, or any thing he has done in pursuance thereof. The order of the Orphans' Court, as we have seen, does not state the grounds on which it was passed. One of the Judges who signed that order was examined as a witness, and says the particular matter on which the sale was set aside was the fraudulent collusion therein between the executors and Hawthorne the purchaser.

Conceding for the sake of the argument, without however intimating an opinion to that effect, that it is competent for a Judge thus to explain by his oral testimony what was intended to be decided by his judicial order, and that that order is open to explanation by evidence *aliunde*, we are clearly of opinion there is nothing in this case to show the sale was tainted with actual and positive fraud. The land was fairly offered at public auction, was competed for by other bidders present, and was sold for its fair value. The only ground on which that sale could be impeached was that the executors were interested therein, and thus became purchasers at their own sale, of property which they held in trust for others. The purchaser, Hawthorne, can stand in no worse position in this respect than if he had been himself one of the executors, and the law does not denounce such sales as fraudulent in fact, or make them absolutely void. It declares them voidable and allows them to be set aside at the instance of a *cestui que trust* or any one interested in the estate, and it does this on grounds of policy established, it is true, in the soundest principles of equity, to remove all temptation from those acting as fiduciaries for others to promote their own interests by violating their trusts. But whenever a party seeks the aid of a Court of Equity against a sale of this kind the rights and equities of the purchaser are never overlooked. *Davoue vs. Fanning,* 2 *Johns. Ch. Rep.,* 252 ; *Mason vs. Martin & Kemp,* 4 *Md.,* 124. In *Smith vs. Townshend,* 27 *Md.,* 390, where sales and deeds of the trust real estate from *cestuis que trust* to trustee were set aside upon the application of the former, this Court said : " in granting this relief it is *equitable* that the complainants be required to repay the purchase money with interest thereon, and that the trustee should be allowed such sums as may have been expended in repairs and improvements of a permanent character." There is certainly nothing to be found in this record tending to induce a Court of Equity to deny to this complainant and purchaser the benefit of these equitable doctrines, or those of like character

announced in *Jones vs. Jones,* 4 *Gill,* 87, and in the more recent case of *McLaughlin vs. Barnum,* 31 *Md.,* 425. He purchased at a public sale for a fair price, has paid the purchase money, and made improvements under the impression he had obtained a good title, and the sale has been vacated for no other conceivable reason than because he agreed at the time the executors or one of them should become interested in the purchase or have some part of the land.

Such would be the undoubted rights and equities of the appellee, if any of these distributees had proceeded in equity to have the sale set aside and the deed from the executors to him vacated. But it is said the Orphans' Court had exclusive jurisdiction over the matter and in the exercise of that jurisdiction has pronounced upon the invalidity of the sale, and the only remedy the appellee had was by appeal from the decision of that Court, and that he cannot maintain a bill in equity for any relief on the subject or on any matter connected with the setting aside of the sale. It must be remembered here that the Orphans' Courts are tribunals of limited powers, forbidden to " exercise any jurisdiction not expressly conferred by law." As the law stood at the time this sale was made and since embodied in the Code, (Article 93, section 280,) it is provided a sale made by an executor under authority derived from the will, " shall not be valid or effective unless ratified or confirmed by the Orphans' Court, after notice given by publication in the same manner practised in cases of sales of lands under decrees in equity." It would be exceedingly difficult in view of the provisions of Article 16, section 68, that " nothing in the testamentary law of this State shall be construed in any manner to affect the general superintending power of the Courts having chancery jurisdiction with respect to trusts," and of section 65 of the same Article, that " where a sale has been made by an executor under a supposed authority derived from a will, the Court" (of Chancery) " may at its discretion confirm such sale on

hearing of the parties interested, or *ex parte* in cases where a bill might be taken *pro confesso*," to hold that the Orphans' Courts have *exclusive* jurisdiction over the confirmation and rejection of such sales, but that question need not be decided in this case. Certain it is these executors could, if they had chosen, have invoked the aid of a Court of Equity and administered their trust under its supervisory power, and if they had done so and this sale had been set aside by that Court, the equities of the purchaser would have been at once recognized and protected. But if we should concede that in a case like this where the executors have proceeded to sell without asking the protection of a Court of Equity, and solely under the authority and direction of the Orphans' Court, the law stated in Article 93, section 280, confers on that Court exclusive jurisdiction to confirm or reject the sale, it extends no further. The power to entertain and adjust the equities of the purchaser, resulting from the order vacating the sale, is not conferred upon that Court and it has no jurisdiction over that subject. Upon appeal from that order the only question open here would be the power of that Court to pass it and the propriety of its passage in the particular case. It would be manifestly unjust to deny the appellee relief in equity, because the distributee had the right to resort to a tribunal whose jurisdiction was adequate to grant him relief by vacating the sale, but totally inadequate to protect the rights and equities of the purchaser, and under all the circumstances of this case we have no doubt of the right of the purchaser to maintain his bill in equity for the purpose of asserting these equities, and for relief to the extent granted him by the decree appealed from.

That decree directs Null, the second purchaser, to bring into Court the purchase money due by him with the interest thereon, and also directs the appellant as executor to bring into Court the money remaining in his hands which was distributed by the Orphans' Court account to George H. Domer, and then refers the case to the auditor to take proof

Eichelberger, Ex'r, *vs.* Hawthorne.

and state an account allowing from the fund derived from these two sources, *first,* the costs of these proceedings, *second,* the proper share or distribution from the said purchase money to George H. Domer, *third,* the balance or so much thereof as may be necessary to the payment of the claim of the complainant, allowing him the whole amount of the purchase money for which the land was sold to him by the executors with interest thereon from the time of payment of the same, and also the cost of all permanent improvements made or erected on the premises during the time he had possession thereof, and charging him with the rents, issues and profits of the land during the same time, and the balance if any to be distributed to the heirs of the deceased testator.

All parties interested in the estate have either by their answers repudiated all claim against the appellee and objected to any disturbance of the accounts under which they have already received their distributive shares from the executors, or acquiesce in the decree by declining to appeal therefrom. Even George H. Domer, who by his next friend, originated the proceedings in the Orphans' Court to vacate the sale, and who was at the date of the decree at least twenty-three years of age, has not appealed. The only appellant is the executor, who can have no personal interest in the matter, and as against him we have no hesitation in affirming the decree.

> *Decree affirmed and*
> *cause remanded.*