1823.<br>Scott<br>vs.<br>Burch

---

## Scott *vs.* Burch's Adm'x.

June.

APPEAL from a judgment rendered in *Montgomery* county court, for the plaintiff in that court, (the now appellee,)

Where a surety in an administration bond obtains possession of the goods of the in-

testate under an order made by the orphans court, (counter security having been required and not given) such surety acquires a right to the goods for the purpose of paying the debts of the intestate, and for distribution; and he hath both the possession and right of property: and the order operates as a divestment or extinguishment of the right derived by the administrator—Nor does the right of possession and property supervene to the administrator on the death of the surety.

The orphans court has no jurisdiction or power to decree the goods, in any event or on any terms, to be delivered over by the surety to the administrator, *qua* administrator.

If the administrator hath suffered by the misconduct of the surety in diminishing any part of the property, his remedy is by a special action on the case to recover damages.

In trover for negro slaves, a bill of sale executed by the plaintiff to a third person for some of the negroes, may be given in evidence by the defendant.

If a sale of property is *bona fide* made under an order of the orphans court, on credit, &c. and the purchaser complied with or offered to comply with the terms of sale, or paid the purchase money, then the property vested in the purchaser without actual delivery.

But his omission of *any one* of the above circumstances, cannot constitute a ground to presume that the sale was not a real one, but was collusive.

An administrator cannot at either a public or private sale purchase in the goods of his intestate for his own benefit.

The proceedings of the orphans court of the account and distribution of the estate of the intestate by the administrator are competent and sufficient evidence against the administrator.

in an action of *trover* for sundry negro slaves. The defendant (now appellant,) pleaded the general issue.

1. The plaintiff, at the trial below, offered in evidence the letters of administration granted to her upon the estate of her deceased husband *Jesse Burch,* by the orphans court of *Washington* county, in the District of *Columbia,* on the 14th of June, 1803. She also proved, by competent witnesses, that the negro woman *Rachel,* named in the declaration, belonged to her intestate at the time of his death, and that the said negro woman, and the other negroes named in the declaration, and who were the children of said *Rachel,* after the death of her intestate, and after she obtained the letters of administration aforesaid, came to her possession as administratrix. That she resided in the city of *Washington,* in the District of *Columbia,* at the time of obtaining the letters of administration, and has ever since resided there. That the negroes before mentioned were, in the month of October 1818, sold by the defendant at public auction, and all of them sold for the following prices: *Sydney* for $540, *Louisa* for $525, *Eliza* for $755, and *Rachel* and her two children for $1030. That at the sale a son of the plaintiff's, and one of the distributees of her intestate, attended as her agent, gave notice to the defendant of her claim to the property, and objected to the sale; but that the defendant, notwithstanding the notice and objection, proceeded to make sale, and did make sale of the said negroes as before stated. That the said negro *Rachel,* and her elder children, were held by *Kinsey Gittings* in *Montgomery* county, whereof he was a citizen ever since the year 1805, and her other children were born in his possession, and so continued at the time of his death, which happened in September 1818. The defendant then offered in evidence a record of the orphans court of the county of *Washington,* in the District of *Columbia,* in which it is stated, that on the 14th of June 1803, letters of administration on the estate of *Jesse Burch,* deceased, were granted to *Jane Burch,* who entered into bond as administratrix, with *Benjamin Bacon, James R. Dermott* and *Kinsey Gittings,* as her sureties, and which bond was approved by the court. Then follows an inventory of the estate of the deceased, returned by the administratrix, amounting to $716 98. That on the 21st of February 1804, *B. Bacon,* one of the above sureties, petitioned the court to order the

administratrix to give counter security; and on her being summoned and having appeared, she was ordered to give counter security. She afterwards produced the bond of *Kinsey Gittings* to *B. Bacon*, dated the 18th of April 1804, conditioned to indemnify him for having become her surety. That on the 27th of April 1815, *Kinsey Gittings* complained to the court that he was under apprehension of suffering by his suretyship on account of the misconduct of the administratrix, and prayed that she might be ordered to give him counter security, or that the property of the deceased might be delivered to him. A summons was ordered against the administratrix, returnable on Saturday week. On Saturday the 11th of May 1805, the court passed the following order: "On application of *Kinsey Gittings*, one of the securities of *Jane Burch*, administratrix of *Jesse Burch*, stating to the court, and satisfactorily proving, that he is in danger of suffering from said securityships—Ordered, that all the property of the said *Jesse Burch* be delivered into the hands of the said *Kinsey Gittings*, unless the said *Jane Burch* give counter security to him on or before the 25th instant, and that citation issue to compel her thereto." On Saturday the 25th of May 1805, *Jane Burch* not appearing, and the summons being returned *non est*, it was ordered to be renewed, returnable on the second Tuesday in June then next, on which day it was ordered by the court that the order of the 11th of May be made absolute, and that she deliver up all the personal property of the deceased to *Kinsey Gittings*. On the 27th of July 1805, *Gittings* returned on oath an inventory of the estate of the deceased in his hands, viz. a negro girl named *Louisa*, daughter of *Rachel*, a negro girl named *Eliza*, daughter of *Rachel*, and prayed an order to sell them. And the court ordered that he should sell them at public auction, on a credit of six months, on giving three weeks notice in the *Washington Federalist*, &c. and taking bond with approved security for payment, with interest. That on the 17th of October 1807, the administratrix, on citation at the suit of *Thomas Burch*, having passed her first account, whereby it appeared that there was in her hands a balance of $602 13, exclusive of an outstanding debt of $120, still due by the deceased, which being deducted, left the sum of $482 13, in her hands, to be distributed, it was ordered that the same be distributed as follows, viz. one third, $160 71,

to be retained by herself as widow, and the remaining two thirds, $321 42, to be divided equally among the five children of the deceased, amounting to $64 28½ each. The defendant then offered to read in evidence a bill of sale from the plaintiff to *Jesse Moran*, for sundry negro slaves, dated the 15th of May 1805, and duly acknowledged and recorded in the county of *Washington* aforesaid, and offered to prove the due execution and enrolment of the said bill of sale; and offered to prove that the negroes, *Rachel* and *Louisa*, in the said bill of sale mentioned, are two of the identical negroes mentioned in the declaration. The plaintiff objected to the admissibility of the bill of sale, and in order to show the same to be inadmissible and incompetent, produced to the court a record of the proceedings in said orphans court. [See the proceedings stated in *Gittings vs. Burch's adm'x.* 9 *Cranch*, 372.] The decree of the orphans court mentioned in the said record of proceeding, and above referred to, was made on the 19th of June 1813, whereby it was "adjudged, ordered and decreed, that the said *Kinsey Gittings* deliver to the petitioner, as administratrix of *Jesse Burch*, the negroes mentioned in the inventory of the defendant, and returned to this court on the 27th of July 1805, and the increase thereof, provided the said *Jane Burch* pay and satisfy the said *Kinsey* the sum of £46 7 0½, paid by him to *William Willson*, executor of *John Clarke*, being the amount of a judgment against *Jesse Burch*, and moreover repay the said *Gittings* $64 28, being so much paid, as it appears, by *Gittings* to *Thomas Burch*, one of the children of *Jesse Burch*, for the amount of his dividend." This decree, as stated in the said record, having been reversed in the supreme court of the *United States*, and the cause remanded to the orphans court, and the administratrix having afterwards, on the 25th June 1816, filed her replication, denying all the matters and things in the answer, the orphans court passed an order for taking testimony, and a number of depositions were taken and returned to the court. That the defendant, although summoned, did not appear. After which, the proceedings state, that on "the 29th of November 1817, this cause standing ready for hearing on the bill, answer and replication, and on the depositions taken, and on all the proceedings had therein, the parties having appeared and being heard, it is, after due consideration by

the orphans court of *Washington* county, and by the authority of the same, adjudged, ordered and decreed, this 29th of November 1817, that the decree formerly passed by this court on the 19th of June, 1813, be and the same is hereby affirmed, and now decreed." The plaintiff further offered evidence to prove, that before the institution of this suit, the negroes in the declaration mentioned were demanded of the defendant, and also, that at the time of making the said demand, she tendered to the defendant, as administrator of *Kinsey Gittings*, the sum of money directed by the decree of the orphans court of *Washington* county aforesaid, to be paid by her to the said *Gittings*, and that the defendant refused to receive the same. The plaintiff also read in evidence the return of sales of the defendant, made by him as administrator of *Kinsey Gittings*, to the orphans court of *Montgomery* county, viz. One negro girl named *Sydney* $540, ditto *Louisa* $525, ditto *Eliza* $755, one negro woman named *Rachel*, and her two children, $1030. These sales were made on the 29th, 30th, and 31st of October 1818. The defendant, it was admitted, was the administrator of *Kinsey Gittings* named in said record, and held possession of the negroes in the declaration named, and sold the same as part of the estate of said *Gittings;* and it was also admitted, that the negroes, in the declaration mentioned, had been returned by the defendant in the inventory of said *K. Gittings's* estate, filed in the orphans court of *Montgomery* county, and that the said sale was made under the orders of that court made for that purpose, on the 14th and 27th of October 1818. The defendant objected to the admission of the said record, and the effect of the said record and parol evidence, especially at this stage of the trial, objecting as well to the substance and effect of the said record and parol evidence, as to the admission of it before the court, for the purpose of determining the preliminary question of the admissibility of the evidence now offered by the defendant; and the court, [*Ridgely* and *Kilgour* A. J.] sustained the plaintiff's objection to the admission and competency of the evidence so offered by the defendant, and refused to permit the said bill of sale to be given in evidence, it being the opinion of the court, that from the record and proceedings had between the plaintiff and *Kinsey Gittings*, deceased, in the orphans court of

the District of *Columbia*, and which the court admitted should be read in evidence on behalf of the defendant, the same being produced and offered by him, and is before referred to. That the defendant, as administrator of *Kinsey Gittings*, acquired possession of, and claimed title to the negroes in the declaration named, as belonging to the estate of *Jesse Burch*, deceased; and that the defendant, thus claiming title under *Kinsey Gittings*, deceased, is concluded from giving the said bill of sale in evidence, to show an outstanding title in a third person, for the purpose of defeating this action. The defendant excepted.

2. The defendant then prayed the opinion, and instruction of the court to the jury, that upon the evidence so offered and produced, as well on the part of the plaintiff as of the defendant, if believed to be true by the jury, the plaintiff is not entitled to recover for the conversion of the several negroes in the declaration mentioned. Which instruction the court refused to give; and upon the prayer of the plaintiff, instructed the jury as follows: That although *Kinsey Gittings*, the defendant's intestate, may have been authorised by the order of the orphans court of the county of *Washington*, in the District of *Columbia*, dated the 11th day of June, 1805, to take possession of the property of the plaintiff's intestate, then still to be administered, and retain the possession thereof till his death, yet upon his death the defendant was not authorised to take the possession thereof, but was bound, when demanded by the plaintiff, as the administratrix of *Jesse Burch*, to deliver up the property to the plaintiff, (the letters of administration granted to her not having been revoked,) she being the only person who, after the death of *Kinsey Gittings*, could claim to hold possession of the said property, and being required by law to go on and discharge her trust; and the sale made of the said property by the defendant, as stated in the testimony, was conversion of it, for which this action may be maintained. To which several decisions of the court, admitting the said exemplification in evidence, refusing the instruction prayed by the defendant, and giving that prayed by the plaintiff, the defendant excepted.

3. The defendant then, for the purpose of proving that a sale had been made by *Gittings* of the negro woman *Rachel*, and her two twin children, pursuant to the orders

and authority of the orphans court of *Washington* county, proved by a competent witness, that he was present in August, 1805, at *Barney's* (now *Semme's*,) Tavern, in *George-Town*, District of *Columbia*, at a public auction then and there had by an auctioneer, under the direction and authority of said *Gittings*, who was present acting as vendor of a negro woman and her two children, who were understood, and stated at the time, to be a part of the estate of *Jesse Burch*, deceased, and that the said negro woman, and her two children, were bought at such auction by Doctor *Osias Offutt;* that the witness saw no money paid, nor any writing given to the auctioneer by *Offutt*, nor does he know that the said negroes, or any of them, were delivered to *Offutt.* The defendant further proved by another witness, that Dr. *Offutt*, (who has been dead about thirteen years,) told the witness early in the morning after the said sale, at the house of said *Offutt's* mother, where he lived, that he had bought a negro woman and her two children the day before, that he had enough on his place, (which was about two miles from his mothers,) and would sell those he had bought at the same price he gave for them, and offered to sell them to the witness at the same price, which was, according to the best of the witness's recollection, less than $300; that the witness declined purchasing them, upon which *Offutt* said he would offer them to *Kinsey Gittings* in preference, and if he would not buy them he must sell them to some one else. The said witness further stated, that the negroes were not present at the time, and he saw them not in Dr. *Offutt's* possession at any time. The defendant then read in evidence *Gittings's* advertisement of said sale, published in the newspaper printed at *George-Town*, called The *Washington Federalist*, more than three weeks before the sale. Whereupon the court, upon the motion of the plaintiff's counsel, instructed the jury as follow: 1st. If they should be of opinion, from the evidence, that the sale was *bona fide* at public auction, and conformable to the order of the orphans court, and an entry of said sale was made by the auctioneer, and that Doctor *Offutt* complied with, or offered to comply with, the terms of sale, or paid the purchase money to *Gittings* for the said negroes, that then the property became vested in him, without an actual delivery

VOL. VI. 10

thereof to him being necessary. 2d. If they should be of opinion, from the evidence, that the terms of sale were not complied with, or offered to be complied with, by Doctor *Offutt*, or the purchase money was not paid by him to *Gittings*, or that there was no delivery of the negroes to the said *Offutt*, that the Jury may and ought to presume that the property in the negroes was not divested, but still remained in *Gittings's* hands, as part of the property belonging to the estate of *Jesse Burch*. 3d. If the jury should be of opinion, from the evidence, that Doctor *Offutt* did purchase the said negroes for *Gittings*, then such sale is void; but if the jury should be of opinion that Doctor *Offutt* did purchase the negroes for himself, and did comply with the terms of sale, or had possession of said negroes delivered him, and afterwards agreed that *Gittings* should have them at his own bid, then the said sale is legal, and the plaintiff is not entitled to recover in this action. To the giving of which instructions, in the terms aforesaid, the defendant excepted. The defendant then prayed the court to give to the jury the opinion and instruction following, to wit: That the proceedings of the orphans court of *Washington* county aforesaid, as contained in the said exemplification given in evidence by the defendant as aforesaid, and the account and distribution therein set forth, as adjusted and settled on the 17th of October 1807, are competent and sufficient evidence against the plaintiff, that all the property returned in the plaintiff's inventory, as administratrix of *Jesse Burch*, had been disposed of and reduced into money by the plaintiff, or with her assent and authority, and with the authority and sanction of the said orphans court. Which instruction the court refused to give as prayed, but instructed the jury, that the proceedings of the orphans court of *Washington* county, as contained in the exemplification given in evidence by the defendant, and the account and distribution therein set forth as having been adjusted and settled on the 17th of October 1807, (provided the jury should be opinion from the evidence that the sale made on the 24th of August 1805, by order of the orphans court, was a *bona fide* sale, and made conformable to the said order,) are competent and sufficient evidence against the plaintiff, to show that all the property returned in the plaintiff's inventory, as administratrix of *Jesse Burch*, had been administered and reduced into money

by the plaintiff, or with her assent, and that the same was sanctioned by said orphans court. To the granting of all and every of which said instructions, and to the refusal of the court to grant the defendant's instruction as prayed, the defendant excepted; and the verdict and judgment being in favour of the plaintiff, the defendant appealed to this court.

The cause was argued before BUCHANAN, EARLE, MARTIN, and DORSEY, J.

*Jones*, for the appellant. Without regard to the form or order in which the several questions arose in the bills of exceptions, he urged the utter inefficacy and incompetency of the decree of the orphans court in question, to invest the plaintiff with a right to prosecute this action. The objections to this decree, he stated, might be summoned under the following heads; 1. The absolute defect of power and jurisdiction in the court to pass such a decree in the absence of any express enactment whatever embracing such a case; and the implication of such a power being clearly excluded, 1st. By the positive restriction of the powers of the court in such as are expressly given by statute, and the positive prohibition of all "incidental power or constructive authority," as declared in the act of 1798, *ch.* 101, *sub ch.* 15, *s.* 20. 2d. By the very narrow limitations of its authority, as well in the subject matter on which it might exert its jurisdiction, as in the forms or modes of its proceeding, being indebted to express statutory enactments for all the most minute and subordinate details of the process, necessary to the exercise of its legitimate functions; in short, for every power deemed strictly incidental to other tribunals. 3d. By the terms of the section granting the original power to deprive an executor or administrator of the assets, and deliver the same to the security, that section providing adequate and specific remedies against the security, and by necessary implication excluding every other; that is to say, a special action on the case; besides the express powers of the court to compel the security, by attachment, sequestration, &c. to a due administration of the assets. 4th. By the evident incongruity and contradiction in terms between the original power specifically granted, to deliver the assets to the security to be administered in a certain course imperatively

prescribed, and the power incidentally assumed to take
back the same assets, and restore them to the same execu-
tor or administrator. 1798, *ch.* 101, *sub ch.* 14, *s.* 11.

2. If it were competent for the orphans court, under
any circumstances, to exercise the assumed power in ques-
tion, by way of a revocation of their original decree, or
otherwise, it was certainly incompetent, after the complete
execution of the original decree, as in this case, by the ac-
tual delivery of the assets, by a sale or pretended sale of
the same, a final account and distribution *in solido*, and
the actual payment by the security of one of the distribu-
tive shares, and of a debt, &c. and all this acquiesced in
for eight years after the passing and consummation of the
decree; in all which proceedings, if there were any fraud,
abuse, or mal-practice whatsoever, the precise case was pre-
sented, either for the special action on the case provided
by the act, or for the compulsory process of the orphans
court, to coerce the security to a specific execution of his
trust.

3. Granting the orphans court the unqualified power to
pass the decree in question, still it operated, *per se*, no
divesture out of the security, or investiture in the admi-
nistratrix, either of the right of property or right of pos-
session, so as to give the administratrix any possessory
action in a court of common law; but such decree
should have been specifically enforced by the compulsory
process of the court that passed it.

4. If that decree were competent to operate, *per se*,
any such divesture and investiture of the rights of proper-
ty or possession, and to give such possessory action, with-
in the same domestic jurisdiction to which the court be-
longed, it was utterly incompetent to operate any such ef-
fect in a foreign jurisdiction; as in this state, where both
the person and property, to be acted on by the decree,
were domiciled.

5. If the decree could here operate that effect in this
state, as against *Kinsey Gittings,* still it was incompetent
so to affect *William Scott,* his administrator—1st. Because
*Gittings* had died invested with all the original rights of
property and possession, conferred upon him by the origi-
nal decree, the administratrix having failed to comply, in
his life-time, with the condition precedent on which, by
the terms of the decree, her right to the property was to

vest. And 2d. Because the decree had not been, in any manner revived, (nor was it capable of being revived,) against the appellant as his representative; who, as such, had no sort of privity to the decree, and was not amenable to the jurisdiction of the court. Upon these grounds, alone, he contended, that the court ought to have delivered to the jury the general instruction prayed by the defendant, as stated in the second bill of exceptions, independent of the particular exceptions to the several opinions of the court excepted to on the record.

6. The right of action did not, by mere operation of law, supervene to the administratrix upon the death of the security, as erroneously inferred by the court to the jury in the second bill of exceptions.

7. The court ought to have granted the instruction upon the competency and effect of the account settled in the orphans court, and the order of distribution, as prayed by defendant in the last bill of exceptions; whereas, the court made the competency and effect of that evidence to depend upon the condition of the defendant's proving, *aliunde*, a fact, which the documentary evidence was perfectly sufficient to prove, *per se*.

8. The court erred in directing the jury, as in the third bill of exceptions, upon the validity of the sale at auction, made by *Gittings*, on the 24th of August 1805, that the sale was vitiated, if *Offutt*, the purchaser, either failed to comply with the terms of sale, or to pay the purchase money, or to have the negroes delivered, &c. and also instructing the jury, upon a mere hypothesis, that *Offutt* had made the purchase for *Gittings*, and in that case that the sale was void.

9. That the court ought to have admitted the bill of sale from the plaintiff to *Moran*, that document being competent and proper to prove—1st That she was wasting the assets, and had given sufficient ground for the interference of the court. And 2d. That she had completely divested herself of all title. He contended that the orphans court must decide on matters within its legitimate jurisdiction. *Rose vs. Himely*, 4 *Cranch*, 241. *Wise vs. Withers*, 3 *Cranch*, 331. The sentence of the orphans court in this case is a mere nullity. *M‘Millan vs. M‘Neill*, 4 *Wheat.* 209. *Fenwick vs. Sears*, 1 *Cranch*, 259. *Dixon vs. Ramsay*, 3 *Cranch*, 310. The orphans court of *Washington*

county in the District of *Columbia*, acts under our act of 1798, *ch.* 101, and is a court of limited jurisdiction, and its authority is very minutely prescribed, and all incidental power is prohibited. Act of 1798, *ch.* 101, *sub ch.* 14, *s.* 11; *sub ch.* 15, *s.* 12, 13, 16, 17, 20.    That court might call for counter security, and the proceedings of the surety is pointed out when the property is delivered to him. *Ibid. sub ch.* 14, *s.* 11.

*Magruder* and *Key*, for the appellee, referred to the acts of 1785, *ch.* 17, *s.* 2; 1798, *ch.* 101, *sub ch.* 14, *s.* 11; *sub ch.* 12, *s.* 5; 1818, *ch.* 217, *s.* 8. *The State, use Chamberlain, vs. Wright*, in this court.   They contended that the decree of the orphans court in 1817 was conclusive and binding on all who claimed under the defendant.

The opinion of the court was delivered by

DORSEY, J.   In deciding on the bills of exceptions, two important questions present themselves to the consideration of the court—*First*, What right did *Kinsey Gittings* acquire in negroes *Rachel*, and her two children *Louisa* and *Eliza*, in virtue of the order of the orphans court of *Washington* county in the District of *Columbia*, directing the property of *Jesse Burch* to be delivered up to him, when considered in connection with his subsequent possession?

*Secondly*. What was the legal effect of the order of the orphans court of the 29th November 1819, by which *Kinsey Gittings* is directed to deliver up to the plaintiff the said three negroes, with their increase, on the terms therein mentioned? By the act of 1798, *ch.* 101, *sub ch.* 14, *sec.* 11, it is provided, that if any security of an executor or administrator shall conceive himself in danger of suffering from his suretyship, he may apply to the orphans court which granted the administration, and the said court may call on the party to give counter security, to be approved by the court; and if the party so called on, shall not, within a fixed reasonable time, give such counter security, the court may order the property remaining in the hands of such executor or administrator, to be delivered up to such security, and the court may enforce the delivery by process as therein after provided; and an inventory of the property delivered to such security shall be returned without delay, and the property contained in said

r

Inventory shall be by the said security sold, distributed and delivered up, as the case may require, under the immediate order of the court, as if said security were executor or administrator. The court are of opinion, that a security who obtains the possession of the goods of the intestate, under an order made pursuant to the provisions of this law, acquires a right to them for the purpose of paying the debts of the intestate, and for the purpose of distribution. The execution of this trust imperiously requires that he should have both the possession and right of property in the effects; and as this right cannot exist in association with the previous right of the administrator, the order must necessarily operate as a divestment or extinguishment of the right derived by the administrator from the letters of administration. If such is the effect of the order, it cannot be contended with success, that upon the death of *Gittings*, the right of possession and property supervened to the plaintiff. The act in terms makes no such provision, and the law cannot imply it in favour of one who has been judicially deprived of all ownership by her default in not giving the necessary counter security. In what manner the property can be affected in the hands of the executor or administrator of the security, it is unnecessary for the court to decide, as that question is not now *sub judice*. The next inquiry is, what is the effect of the order of the orphans court of 29th November 1817? By the 15 *sub ch. sec.* 20, of the testamentary system, (1798, *ch.* 101,) it is declared that the orphans court shall not, under pretext of incidental power or constructive authority, exercise any jurisdiction whatever, not expressly given by that act or some other law. And to avoid the necessity of a recurrence to incidental or implied authority, the powers of the orphans court, both in relation to the subject matter of its jurisdiction, and the forms of its proceeding, are declared with the most formal and precise minuteness. Does this law then invest the orphans court with the jurisdiction and power of decreeing or ordering the goods, in any event or on any terms, to be delivered over by the security to the administrator *qua* administrator? Upon an examination of its provisions no such power can be found, and the exercise of such a power of revocation can only be countenanced by the doctrine of constructive authority; but recourse to such a principle is emphatically

1823.

Scott
v.
Burch

condemned by the express enactment of the statute. The administratrix must therefore be content with the only remedy which the law furnishes, and that is a special action on the case to recover damages in case she shall suffer from the misconduct of her security in diminishing any part of the property without obtaining an allowance for the same from the court. But even supposing that the orphans court had jurisdiction to pass the order of the 29th November 1817, still the plaintiff would have no right to maintain the present action, inasmuch as the order could not of itself so operate as to confer on her the right of possession and property in the negroes, before it was carried into effect by some one of the means by which that court is authorised to enforce the execution of its own decrees. Under this view of the subject, this court thinks, that *Montgomery* county court erred in refusing to direct the jury, as prayed by the defendant in his second bill of exceptions, that the plaintiff was not entitled to recover; and that they also erred in declaring to the jury, that after the death of *Gittings*, the defendant was bound, on the demand of the plaintiff, to deliver up the negroes to her. And we also think that the court below erred in refusing to permit the defendant's counsel to read to the jury the bill of sale, executed by the plaintiff to *Jesse Moran*, for three of the negroes mentioned in the declaration, as she had not shown a title to those negroes, acquired since the order of the orphans court of the 11th June 1805, which operated to divest her of all previous right. And we are further of opinion, that the court below did not err in the direction which they gave to the jury on the first prayer of the plaintiff, as set forth in the third bill of exceptions. But we dissent from the opinion expressed by the court below on the second prayer of the plaintiff, as set forth in the last mentioned bill of exceptions. They instructed the jury, that if they should be opinion, from the evidence, that the terms of sale were not complied with, or offered to be complied with, by Doctor *Offutt*, or the purchase money was not paid by him to *Gittings*, or that there was no delivery of the said negroes to said *Offutt*, that the jury may and ought to presume, that the property in the negroes was not divested, but still remained in *Gittings*' hands as part of the property belonging to the estate of *Jesse Burch*. It

cannot escape observation, that the court decided, tha' the omission of any one of the above circumstances constituted a ground on which the jury might presume that the sale made of the negroes by *Gittings* to *Offutt*, was not a real one. But this decision cannot be supported, as the mere omission of *Gittings* to receive the amount of the purchase money, (more especially in a case where six months credit constituted part of the terms of the sale,) cannot, *per se,* unconnected with any other circumstances, afford a presumption that the sale was collusive.

The opinion of the court below, on the third prayer of the plaintiff, as set forth in the third bill of exceptions, is correct. We consider the law to be too well established, now to be drawn in question, that an administrator cannot, at either a public or private sale, purchase in the goods of his intestate for his own benefit. But if the goods are *bona fide* purchased by a third person for his own use and benefit, without collusion between him and the administrator, neither the principles of law nor equity preclude the administrator from afterwards acquiring a right in the goods by a subsequent contract with such purchaser. The fourth prayer of the defendant, as set forth in the third bill of exceptions, was in our opinion correctly rejected by the court below; and the subsequent opinion expressed by the court, though not required by either the plaintiff or defendant, does not appear to be exceptionable.

JUDGMENT REVERSED.