# GENEVIEVE E. SESSIONS

## vs.

## IRENE M. SESSIONS CASEY, Executrix.

*Sale by Executrix—Subsequent Purchase—Adequacy of Price.*

Executors and administrators cannot purchase at their own sales property which they hold in trust for others.      p. 315

In a proceeding to set aside an executor's sale of a market stall, *held* that the evidence showed the price paid to be fair and sufficient.      p. 315

In a proceeding to set aside a sale by an executrix, *held* that the nominal purchaser was not the agent of such executrix, but that he bought for himself and with his own money, although he subsequently resold to the executrix purchasing for herself personally.      p. 316

*Decided June 22nd, 1922.*

Appeal from the Circuit Court No. 2 of Baltimore City (STUMP, J.).

Bill by Genevieve E. Sessions, by her next friend, James Y. Claypoole, against Irene M. Sessions Casey, executrix of John M. Sessions, deceased, and others. From a decree dismissing the bill, the plaintiff appeals. Affirmed.

The cause was argued before BOYD, C. J., BRISCOE, THOMAS, STOCKBRIDGE, ADKINS, and OFFUTT, JJ.

*Eugene Frederick,* with whom were *Blades, Rosenfeld & Frederick* on the brief, for the appellant.

*George Arnold Frick,* for the appellee.

BRISCOE, J., delivered the opinion of the Court.

The object and purpose of this proceeding is to vacate and set aside the sale of certain market stalls, in Lexington Market, Baltimore City, made by the executrix of one John M. Sessions, late of Baltimore City, deceased, in pursuance to an order of the Orphans' Court of Baltimore City, authorizing the sale, and which was subsequently ratified and confirmed by that court.

Mr. Sessions died on the 3rd day of August, 1916, leaving surviving him a widow, Irene M. Sessions, and three infant children, Genevieve E. Sessions, John M. Sessions and M. I. Louise Sessions.

By his last will and testament dated the 22nd day of April, 1912, he gave and devised all of his property of every kind and description unto his wife, Irene M. Sessions, during her natural life or widowhood, "and from and immediately after her death or remarriage, whichever shall first occur, then the property and estate to go to and vest in all of his children, share and share alike, the child or children of any deceased child or children to have the share which the parent of such child or children would have taken if living."

This will was duly admitted to probate in the Orphans' Court of Baltimore City, and Mrs. Sessions, the executrix named in the will, qualified as such and proceeded to administer the estate.

Subsequently, on the 12th of April, 1917, she stated an administration account and distributed the residue of the estate, according to the directions of the will, to herself for life, with remainder over to the three children of the testator.

Thereafter, on or about the 12th day of July, 1920, Mrs. Sessions, the widow, intermarried with one Dorrance E. Casey, and thereupon, under the testator's will, the property and estate of Mr. Sessions became the absolute property of the plaintiff, Genevieve E. Sessions, and the two defendants, John M. Sessions and M. I. Louise Sessions, children of John M. Sessions, deceased.

The answer of Mrs. Sessions, now Mrs. Casey, the execu-trix, admits that among the assets of the estate were certain market stalls in Lexington Market in Baltimore City, and stalls Numbers 664 and 839 were, on the 3rd day of April, 1917, sold to the defendant, Lloyd J. Hellman, at and for the sum of $1,250.

The answer further avers that these sales were made neces-sary, for the purpose of securing money to pay the debts of the deceased, John M. Sessions, and the costs and expenses of the administration of his estate. That the sales were in purusance of an order passed by the Orphans' Court of Bal-timore City, and were ratified and confirmed by that court. ·

The answer also avers that the purchase money for these stalls was paid in cash by the purchaser and was disbursed by her in the administration of the estate. She denies that the stalls were sold to the purchaser, so that they might be trans-ferred to her, but avers that the sale to Lloyd J. Hellman was in all respects a *bona fide* one, and that he purchased them with the intention of making a permanent investment, but subsequently in good faith sold them to her, for the price which he paid for them, which was the value the appraisers had put on them.

The bill, it will be seen, charges and avers that the sale by the executrix to the defendant Hellman was in fact a sale to Irene M. Sessions, personally, and that the purchaser, Hellman, was acting as her agent in the purchase and was a conduit of title, for the express purpose of vesting title to the market stalls in her, and that the executrix was therefore an improper purchaser at her own sale.

The bill also charges that the property was sold for an in-adequate price, and the sale of these two stalls made the other stalls practically valueless, and that great and irreparable loss and injury has resulted thereby to the plaintiff and the other two children of the testator.

The defendants, Irene M. Sessions and Lloyd J. Hellman, in their answer deny all fraud and all the material allegations

of the bill, and aver that the sale was *bona fide,* and that Hellman was a purchaser in good faith of the stalls for value, for himself, and subsequently he sold them to Mrs. Casey; that the price paid by him was adequate, and was the full and appraised value, of the property.

The case was heard upon bill, answers and testimony, taken in open court, and from a decree of Circuit Court No. 2 of Baltimore City, dated the 28th day of December, 1921, dismissing the plaintiff's bill, this appeal has been taken.

The law is well established, upon the soundest grounds of equity and public policy, that executors and administrators cannot be purchasers at their own sale of property which they hold in trust for others. Such sales are voidable, and a court of equity has jurisdiction to vacate and set them aside, at the instance of any one interested in the estate. This rule has been settled and applied, in a number of cases, in this court.' *Conway* v. *Green,* 1 H. & J. 151; *Williams* ·v. *Marshall,* 4 G. & J. 276; *Scott* v. *Burch,* 6 H. & J. 67; *Maryland Fire Ins. Co.* v. *Dalrymple,* 25 Md. 242; *Eichelberger* v. *Hawthorne,* 33 Md. 588.

The first question that presents itself in the case, for our consideration, is whether the proof disclosed by the record is sufficient to sustain the allegations of the bill, and to authorize the court in granting the relief sought by the bill.

The question as to the valuation of the two stalls that were sold, is free from difficulty. The testimony is sufficient to show that the price paid was a reasonable one, and a fair value for the property sold. The two appraisers in the Register of Wills' office of Baltimore City testified that they were acquainted with the value of market stalls in every part of Baltimore City, and that twelve hundred and fifty dollars was a fair value at that time for those stalls. They also testified that they had been in the habit of appraising stalls in all the markets of the city, that they had made diligent inquiry concerning the sales and values of stalls before they appraised the stalls in question, and before they reached a conclusion as to the value of these stalls.

The witness Hayes, who had been engaged in the fish business in Lexington Market for about thirty years, testified that he was familiar with the fair value of stalls 664 and 839, and they would not be worth more than eight hundred dollars to do fish business, and the values of the other stalls were not diminished by sale of these stalls. The evidence, we think, is sufficient to show that the price paid for these stalls by the purchaser Hellman was a fair and sufficient price for property of this kind, and there is nothing to be found in the record tending to show any such inadequacy of price as would justify a court of equity in setting the sale aside on that ground.

The second objection, that the sale of the stalls was not in fact to Hellman the purchaser, but to Hellman as agent for Mrs. Casey, the executrix, is not supported by the proof. On the contrary, the testimony of the purchaser, Hellman, is to the effect that the sale was in good faith to him, by the executrix, that he bought the property for his own purposes, and with his own money.

The executrix, Irene Casey, testified that the sale was a *bona fide* one, that she had no idea, at the time of the sale to Hellman, of buying the stalls, and that she paid no part of the consideration money that was paid for the property.

The testimony of Senator Sproesser, who was the attorney for Mrs. Casey, the executrix, and who negotiated the sale, is in part as follows:

"Q. How did you proceed to get the power to sell the stalls? A. We got an order of court to sell those two stalls. Q. Then, what did you do? A. I first offered them to Mr. Geo. Sessions. Q. Why did you offer them to him? A. Well, I thought on account of him being a member of the firm they would rather buy them than anybody else and I went to Mr. Joe Sessions there and consulted him and his wife, and he said, no, he did not think they were a good investment and would not buy them. Then, I put it up to Lloyd Hellman and he bought the stalls. Q. Did the then Mrs. Sessions have anything to do with the sale of the stalls? A. No, sir; ex-

cept to sign a report of sale or something of that kind. Q. I mean, she did not handle it? A. In fact, she did not handle anything. She did not know anything about business. Q. You handled it yourself? A. Yes, sir, myself and Mr. Taylor. The clerical work and accounts I turned over to Mr. Taylor. Q. What do you know about the sale of Lloyd Hellman to Mrs. Sessions? A. Mrs. Sessions came and saw me and told me Lloyd offered her the stalls, and I told her I thought it was perfectly proper, and she bought them."

There is other proof in the record, both on the part of the plaintiff and the defendant, all of which we have examined with much care, but we do not deem it sufficient, on the whole record, to justify a court of equity in vacating and setting aside the sale in this case, upon the grounds alleged in the bill.

In the opinion of the Court, the plaintiff has failed to establish her case, and it follows, the decree of the court below, dated the 28th of December, 1921, in dismissing the bill, must be affirmed.

*Decree affirmed, with costs in both courts.*