Kostas **AKROTIRIANAKIS**, also known as Costas Akros, individually and as attorney-in-fact for the residuary heirs of George Perry, deceased

v.

George T. **BURROUGHS**, Emanuel Tsourounis, Maryland National Bank, Hoke Coin Machine Service, Inc., Leon Halkos.

Civ. No. 17762.

United States District Court
D. Maryland.

Jan. 10, 1967.

John L. Kilcullen and McNutt, Dudley & Easterwood, Washington, D. C., and William B. Kempton and Barton, Wilmer, Bramble & Penniman, Baltimore, Md., for plaintiffs.

Paul Berman and Arnold Fleischmann, Baltimore, Md., for defendant Burroughs.

Shale D. Stiller, M. Peter Moser and Frank, Bernstein, Conaway & Goldman, Baltimore, Md., for defendant Tsourounis.

Norman P. Ramsey, David F. Albright and Semmes, Bowen & Semmes, Baltimore, Md., for defendant Maryland Nat. Bank.

Samuel J. DeBlasis and DeBlasis & Kahler, Washington, D. C., for defendant Hoke Coin Machine Service, Inc.

Jerrold V. Powers, Upper Marlboro, Md., for defendant Halkos.

THOMSEN, Chief Judge.

Defendants Tsourounis and Maryland National Bank have moved to dismiss the amended complaint herein (1) for failure to state a claim upon which relief can be granted, (2) for lack of jurisdiction over the subject matter because this Court has no jurisdiction in matters of probate and estate administration, (3) on grounds of comity, and (4) on the basis of the abstention doctrine. The requisite diversity of citizenship and amount in controversy are not disputed.

*The Complaint*

The amended complaint alleges in substance:

Plaintiff Akrotirianakis is one of the residuary beneficiaries named in the will of the late George Perry, which was duly admitted to probate in the Orphans' Court of Prince George's County, Maryland, on June 11, 1963. Akrotirianakis is attorney-in-fact for the other residuary beneficiaries, all of whom are citizens and residents of Greece, and the action is brought by Akrotirianakis on his own behalf and on behalf of the other residuary beneficiaries.

Defendants Burroughs, Tsourounis and Maryland National Bank are the executors and trustees named in Perry's will. Letters testamentary were issued to them by the Orphans' Court on June 11, 1963, and they qualified by posting bond in the amount of $40,000 for the faithful performance of their duties as executors.

Perry's will directed that the executors take possession of all his real and personal property, sell and reduce the same to cash and, after payment of all debts, obligations and specific bequests, hold the residuary estate as trustees for the benefit of plaintiffs herein and, upon termination of the trust, distribute the residuary estate to plaintiffs.

Until April 1962 Perry owned and operated the Village Barn Restaurant and Night Club on Suitland Road in Prince George's County. The property consisted of about three acres of land and a building housing the restaurant and an ABC store. In April 1962 Perry leased the property to Village Barn Corporation, which was then owned jointly by two men not involved in this case. At the same time Perry sold to Village Barn Corporation the furnishings, fixtures, good will and stock in trade of the Village Barn Restaurant and the adjacent ABC store, together with his interest in the ABC license under which the

Restaurant was operated, for $82,500. Of this amount Village Barn Corporation paid Perry $20,000 in cash and delivered to him its note for $62,500, secured by a chattel mortgage on the furnishings, fixtures and interest in the ABC license. In accordance with the terms of the note, Village Barn Corporation paid Perry $500 a month for interest and reduction of principal until Perry's death in May 1963, but after his death no more payments were made.

At or about the time of Perry's death defendant Tsourounis and his nephew, defendant Halkos, purchased a fifty percent interest in Village Barn Corporation, which they still hold. Defendant Burroughs, as attorney for Village Barn Corporation, participated in the negotiations.

An appraisal of the real estate and personal property owned by Perry at the time of his death, made at the direction of the Orphans' Court, showed a value of $60,000 for the Village Barn property, and $31,250 for the chattel mortgage note.

In August 1964 defendants Burroughs, Tsourounis and the Bank, as executors of Perry's estate, sold and transferred to defendant Hoke Coin Machine Service for $63,000 the land and building comprising the Village Barn property, together with the chattel mortgage note. On the same day and at the same time Hoke transferred the land, building and chattel mortgage note to defendant Halkos for the same consideration, $63,000. It is alleged that in receiving title to the real property and the chattel mortgage note, Hoke and Halkos were mere conduits by which the beneficial interest and ownership in the property and note became vested in Tsourounis, that Burroughs was aware of the interest of Tsourounis in the Village Barn Corporation and was aware that Hoke was a conduit through which Tsourounis obtained such beneficial interest. Thus, Burroughs, Tsourounis and the Bank, as executors and trustees of the estate of Perry, in breach of their fiduciary obligations to plaintiffs as the residuary heirs and trust beneficiaries of the estate, permitted one of the trustees, Tsourounis, to acquire trust property having a total value substantially in excess of the sale price received for such property. It is further alleged that Burroughs also breached his duties as fiduciary by misinforming and misleading plaintiffs into the belief that the offer of $63,000 made by Hoke was a bona fide offer, and by not disclosing to plaintiffs that Hoke was acting merely as a conduit. As a result, although plaintiffs were of the belief that the sale price did not reflect the true value of the property, they lacked sufficient information upon which to file an objection to the sale in the Orphans' Court, and did not become aware of the true facts surrounding the transaction until sometime after the executors had filed their final administration account on July 26, 1966, and the Orphans' Court had approved that account.

Plaintiffs pray for an order: (1) setting aside the sale of the Village Barn property and chattel mortgage note; (2) requiring defendants to make plaintiffs whole for the loss to the estate resulting from defendants' breach of trust; (3) requiring defendants Tsourounis and Halkos to account for all profits received from the Village Barn Corporation, and all amounts received as rents or other payments in connection with the Village Barn property; (4) awarding plaintiffs such further sums as shall be determined by this Court to be appropriate damages for defendants' breach of trust; and (5) granting plaintiffs such other and further relief as the Court may deem just and proper.

### Discussion

■ The amended complaint alleges facts which, if proved, would justify rescission of the sale on grounds of fraud and breach of fiduciary duty. Defendants contend, however, that this Court lacks jurisdiction over the subject matter because it has no jurisdiction in matters of probate and estate administration. Plaintiffs deny that the case comes within that principle.

The rule in this Circuit was authoritatively stated [1] in Foster v. Carlin, 4 Cir., 200 F.2d 943, 947 (1952), as follows:

"The law is well settled that the federal courts have no jurisdiction over matters within the exclusive jurisdiction of state probate courts. However, as to matters which do not involve administration of an estate or the probate of a will, but which may be determined in a separate action *inter partes* in the courts of general jurisdiction of the state, the federal courts do have jurisdiction if the requisite diversity of citizenship exists.

" 'In each case the jurisdictional question can be decided by determining whether the action could be maintained in a state court of general jurisdiction in the state where the federal court sits.' Illinois State Trust Co. v. Conaty, D.C.R.I., 104 F.Supp. 729, 731, citing Ferguson v. Patterson, 10 Cir., 191 F.2d 584."

The Fourth Circuit discussed a number of earlier decisions, including Markham v. Allen, 326 U.S. 490, 66 S.Ct. 296, 90 L.Ed. 256 (1946), where the Supreme Court said:

" * * * while a federal court may not exercise its jurisdiction to disturb or affect the possession of property in the custody of a state court * * * it may exercise its jurisdiction to adjudicate rights in such property where the final judgment does not undertake to interfere with the state court's possession save to the extent that the state court is bound by the judgment to recognize the right adjudicated by the federal court." 326 U.S. at 494, 66 S.Ct. at 298.

The property in question is not in the possession or control of a state court.

It was sold to Hoke Coin Machine Service by the executors pursuant to the power contained in the will and the order ratifying the sale entered by the Orphans' Court.

The effect of the order ratifying the sale and the power of the Orphans' Court in connection therewith are clearly stated in Sykes, Maryland Probate Law and Practice, the recognized authority on the subject in Maryland, at § 658:

"A sale by an executor under a power in a will is not 'valid or effectual' unless ratified and confirmed by the Orphans' Court, or by an equity court, if the executor has chosen to administer his trust there. An order nisi must be published in the same manner as practiced in cases of sales of lands under decrees in equity. The sale may, however, be ratified immediately, without publication, if all the parties are *sui juris* and give their consent to an immediate ratification. The jurisdiction of the Orphans' Court extends no further than to confirm or reject the sale. A sale ratified by the court stands on the same footing as an ordinary contract of sale made between persons competent to contract. The court can neither decree specific performance nor rescission. Upon vacating a sale it has no power to pass upon and adjust the rights and equities of the purchaser growing out of the order of vacation. Such jurisdiction belongs exclusively to a court of equity. * * * "

The text is supported by appropriate citations of Maryland cases.

■ Undoubtedly the Orphans' Court would have authority to consider and rule on an application to strike out its order of ratification. Montgomery v. Williamson, 37 Md. 421 (1873); Munnikhuysen v. Magraw, 57 Md. 172 (1881).[2]

---

1. See also Smith v. Moore, 4 Cir., 343 F.2d 594, 599, n. 3 (1965); Perkins v. Warburton, D.Md., 4 F.2d 742 (1922); and Hinkley v. Art Students' League of New York, 4 Cir., 37 F.2d 225 (1930), aff'g D.Md., 31 F.2d 469 (1929); King v. Richardson, 4 Cir., 136 F.2d 849 (1943); Dickson v. Alexandria Hospital, Inc., 4 Cir., 177 F.2d 876 (1949).

2. See also Malkus v. Richardson, 124 Md. 224, 92 A. 474 (1914); French v. Washington County Hospital, 115 Md. 309, 80 A. 913 (1911); Hardt v. Birely, 72 Md. 134, 19 A. 606 (1890).

But the Orphans' Court has no power to decree rescission of the contract made by the executors with Hoke Coin Machine Service, nor to affect the title of Halkos, to whom the property was transferred by Hoke. Such jurisdiction belongs exclusively to a court of equity. *Sykes*, op. cit., and cases cited therein.

In Carter v. Van Bokkelen, 73 Md. 175, 179–180, 20 A. 781, 782 (1890), the Court said: "* * * When ratified and confirmed, as required by the statute, a sale was valid; the Orphans' Court approved the contract, but had no power to enforce its execution. The parties might bring before other tribunals such matters as would entitle them to its performance or rescission. In this respect, a sale ratified by the Orphans' Court stands on the same footing, as an ordinary contract of sale made between persons competent to contract." The *Carter* case was cited in Cook v. Safe Deposit & Trust Company, 172 Md. 398, at 403, 191 A. 713, at 716 (1937), where the Court said: "The power of the orphans' court ends, however, with the ratification of the sale, as it has no power to enforce its order, but the executor can resort to chancery for specific performance or recission."

Defendants cite the early case of Eichelberger, Executor v. Hawthorne, 33 Md. 588 (1870). In that case certain real estate was sold by executors and the sale was reported by them to the Orphans' Court, which passed the usual order of ratification nisi but never passed an order of final ratification. The executors executed a deed to the purchaser and received and accounted for the purchase money. Some years later one of the distributees filed a petition in the Orphans' Court alleging collusion between the purchasers and the executors; he objected to the ratification of the sale and prayed that it be disaffirmed and rejected. The Orphans' Court, after hearing, passed an order rejecting and setting aside the sale, and one of the executors resold the property. Thereupon, the original purchaser filed a bill in equity asking that the original sale

to him be confirmed and his title to the land secured. If that could not be done, the purchaser sought to be reimbursed out of the purchase money from the second sale the full amount he had paid to the executors on the original purchase. The Court of Appeals noted that the complainant had acquiesced in the refusal of the equity court to interfere with the order of the Orphans' Court vacating the sale, so that question was not before the Court of Appeals. After further noting "that the Orphans' Courts are tribunals of limited powers, forbidden to 'exercise any jurisdiction not expressly conferred by law'", the Court addressed itself to the peculiar situation presented. The Court said: "But if we should concede that in a case like this where the executors have proceeded to sell without asking the protection of a Court of Equity, and solely under the authority and direction of the Orphans' Court, the law stated in Article 93, section 280 [now section 316], confers on that Court exclusive jurisdiction to confirm or reject the sale, it extends no further." The Court of Appeals held that the Orphans' Court had no power to pass upon and adjust the rights and equities of the purchaser growing out of the order of vacation, and that such jurisdiction belongs exclusively to a court of equity.

Any comfort defendants may derive from that curious case is more than offset by Sessions v. Casey, 141 Md. 312, 118 A. 759 (1922), where a bill in equity was filed by the beneficiaries to set aside the sale of certain market stalls made by an executrix, the sale having been made pursuant to an order of ratification by the Orphans' Court. The jurisdiction of the Circuit Court was apparently not challenged, and its decision on the merits was affirmed by the Court of Appeals, which said:

"The law is well established, upon the soundest grounds of equity and public policy, that executors and administrators cannot be purchasers at their own sale of property which they hold in trust for others. Such sales

are voidable, and a court of equity has jurisdiction to vacate and set them aside, at the instance of any one interested in the estate. This rule has been settled and applied, in a number of cases, in this court. Conway v. Green, 1 H. & J. 151; Williams v. Marshall, 4 Gill. & J. 276; Scott v. Burch, 6 H. & J. 67; Maryland Fire Ins. Co. v. Dalrymple, 25 Md. 242; Eichelberger v. Hawthorne, 33 Md. 588." 141 Md. at 315, 118 A. at 760.

See also McComas v. Wiley, 132 Md. 406, 104 A. 52 (1918), where the Court held that questions of title to real estate are "beyond the jurisdiction of the orphans' court to hear and determine"; and Tribull v. Tribull, 208 Md. 490, 119 A.2d 399 (1956).[3]

■ In the present case the Orphans' Court might strike out its order of ratification and direct the executors to take appropriate action in an equity court to obtain relief against Hoke Coin Machine Service, Halkos, Tsourounis, and possibly Burroughs. But Tsourounis and Burroughs are the two individual executors, and they, with the Bank, are the trustees of the residuary estate for the benefit of the plaintiffs herein. It is unlikely that Tsourounis and Burroughs would press aggressively claims against themselves. The Orphans' Court might appoint an administrator c. t. a.,

but it would have no authority to appoint substituted trustees; that jurisdiction rests solely in courts of equity. In view of the Maryland rule that a sale ratified by the Orphans' Court stands on the same footing as an ordinary contract of sale made between parties competent to contract, *Sykes,* op. cit., and Carter v. Van Bokkelen, supra, and the limited jurisdiction of the Orphans' Courts in Maryland, it is clear that no adequate relief can be granted by the Orphans' Court to plaintiffs herein; and if the facts alleged in the amended complaint are true, plaintiffs are well justified in seeking the aid of a court of equity to rescind the sale. If this action were brought in the Circuit Court for Prince George's County, no reasonable objection to its jurisdiction could be raised.

■ Since the relief prayed herein would not interfere with the probate of a will or the administration of an estate "save to the extent that the state court [would be] bound by the judgment to recognize the right adjudicated by the federal court", Markham v. Allen, supra, 326 U.S. at 494, 66 S.Ct. 296, 90 L.Ed. 256, and since the requisite diversity of citizenship exists, this Court has jurisdiction to hear the case. See the cases cited above, especially Foster v. Carlin. The cases cited by defendants are distinguishable.[4]

3. In the *Tribull* case a residuary legatee filed a bill in equity against the executors to set aside a transfer of a savings account made by decedent before her death to one of her daughters. The Court of Appeals said: "In the instant case the only remedy which the Orphans' Court could give would be to direct the executors to bring suit; that court could not try the issue of the validity of the transfer of the bank account * * * we think that the case is one in which equity can give full relief and that all necessary parties are before the court."

4. E. g. Simmons v. Saul, 138 U.S. 439, 11 S.Ct. 369, 34 L.Ed. 1054 (1891), upon which defendants strongly rely, was an equity suit to set aside the granting of letters of administration and to charge defendant, as trustee for complainants,

with the value, rents and profits of certain land. A judgment had been rendered by a Parish Court in Louisiana, which had far greater jurisdiction than an Orphans' Court in Maryland. The Supreme Court held that the judgment of the Parish Court was entitled to full faith and credit and that a court of equity need not interfere because the Parish Court "had adequate power to afford relief". There was no discussion of federal jurisdiction as distinguished from general equity jurisdiction. In the instant case, as we have seen, the Orphans' Court for Prince George's County does not have jurisdiction to afford adequate relief. Sutton v. English, 246 U.S. 199, 38 S.Ct. 254, 62 L.Ed. 664 (1918), was essentially a suit to annul a will which, under the State law, was cognizable only in a probate court.

■ Whether plaintiffs herein, if successful, would be entitled to all the relief prayed need not be decided at this time. It may be that some of the relief sought would have to be granted, if at all, to executors or administrators c. t. a. appointed by the Orphans' Court. But that does not destroy plaintiffs' right to obtain from this Court a decision on the question whether the sale by the executors to Hoke and the subsequent transfer of title from Hoke to Halkos should be set aside on grounds of fraud and breach of fiduciary duty on the part of the executors and trustees. The following passage from Foster v. Carlin, 200 F.2d at 948, is apposite here:

"The fact that complainant prays for incidental relief which the federal court is without jurisdiction to grant does not prevent an adjudication by the federal court of the rights of the respective parties in an estate. In Markham v. Allen, supra, the Court said, 326 U.S. at page 495, 66 S.Ct. at page 298:

" 'Although in this case petitioner sought a judgment in the district court ordering defendant executor to pay over the entire net estate to the petitioner upon an allowance of the executor's final account, the judgment declared only that petitioner [was entitled to the net estate]. The effect of the judgment was to leave undisturbed the orderly administration of decedent's estate in the state probate court and to decree petitioner's right in the property to be distributed after its administration. This * * * is not an exercise of probate jurisdiction or an interference with property in the possession or custody of a state court.' "

Defendants argue, however, that this Court should refuse jurisdiction on the grounds of comity or abstention. The controlling case on the issue of comity is Princess Lida v. Thompson, 305 U.S. 456, 59 S.Ct. 275, 83 L.Ed. 285 (1939).

Mr. Justice Roberts, speaking for a unanimous Court, said:

" * * * it is settled that where the judgment sought is strictly in personam, both the state court and the federal court, having concurrent jurisdiction, may proceed with the litigation at least until judgment is obtained in one of them which may be set up as res judicata in the other. On the other hand, if the two suits are in rem, or quasi in rem, so that the court, or its officer, has possession or must have control of the property which is the subject of the litigation in order to proceed with the cause and grant the relief sought the jurisdiction of the one court must yield to that of the other. We have said that the principle applicable to both federal and state courts that the court first assuming jurisdiction over property may maintain and exercise that jurisdiction to the exclusion of the other, is not restricted to cases where property has been actually seized under judicial process before a second suit is instituted, but applies as well where suits are brought to marshal assets, administer trusts, or liquidate estates, and in suits of a similar nature where, to give effect to its jurisdiction, the court must control the property. The doctrine is necessary to the harmonious cooperation of federal and state tribunals. * * *" 305 U.S. 466–467, 59 S.Ct. 280.

In that case the court which first assumed jurisdiction over the matter was a Pennsylvania State court of broad jurisdiction. In the instant case the issues presented by the amended complaint have never been presented to a state court. The situation is very different from that in Princess Lida v. Thompson. A state equity court and this federal court are the only tribunals which can decide (1) whether the sale should be rescinded for fraud or breach of fiduciary duty, and (2) what relief, if any, should be granted against the defendant who now holds title to the property, as well as against those who are alleged to have perpetrated and to have profited by the claimed fraud. Those

issues have not been presented to any state court. The pending appeal from the order ratifying the second administration account deals with an issue not involved in this case.

■ In both United States v. Mercantile Trust Company, D.Md., 62 F. Supp. 837 (1945), and National Bank of Topeka v. Graham, D.Md., 156 F.Supp. 471 (1957), where federal jurisdiction was declined on grounds of comity, the property was already under the control of a state court of competent jurisdiction, which was fully capable of granting the relief sought by the plaintiffs. In the instant case, as we have seen, the power of the Orphans' Court was and is limited. No principle of comity requires the dismissal of the amended complaint in this case.

■ Nor is this a case for the application of the abstention doctrine, developed in such cases as Commonwealth of Pennsylvania v. Williams, 294 U.S. 176, 55 S.Ct. 380, 79 L.Ed. 841 (1935), Burford v. Sun Oil Company, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943), and Louisiana Power & Light Company v. City of Thibodaux, 360 U.S. 25, 79 S.Ct. 1070, 3 L.Ed.2d 1058 (1959). Defendants argue that the doctrine should be applied where the state law is uncertain, and that the state law applicable in the instant case is uncertain. This Court does not agree. The Maryland law is clearly stated in *Sykes*, op. cit., § 658, quoted above.

■ A federal court should not stretch for jurisdiction in such a case as this. On the other hand, where citizens of a foreign country claim to have been defrauded by citizens of the United States, a federal court should not refuse to exercise jurisdiction which it clearly possesses, despite the fact that this Court is confident that the Circuit Court for Prince George's County would decide this case fairly. Citizens of other states and of foreign countries are entitled to invoke the diversity jurisdiction.

The motions to dismiss the amended complaint are hereby denied.